**Charles Robert VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0241–95.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 20, 1996.

---

Herb H. Ritchie, Greg Glass, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

The Harris County grand jury indicted appellant, Charles Robert Villarreal, for felo-

ny possession of marihuana and felony possession of cocaine with intent to deliver. See Tex. Health & Safety Code § 481.112(a) & (c) and § 481.121(a) & (b)(4). Appellant, citing Article 38.23 of the Texas Code of Criminal Procedure, the Fourth Amendment to the United States Constitution, and Article I, § 9, of the Texas Constitution,[1] argued in a pretrial motion that the contraband in question should be suppressed as the fruit of an unreasonable police entry [2] into a private residence in which he was a non-overnight guest. The State counterargued, *inter alia*, that appellant had no legitimate expectation of privacy in the residence and, therefore, no standing to assert either of his constitutional claims. The trial court denied the motion to suppress after an evidentiary hearing, and appellant pled guilty to both offenses. The trial court then sentenced appellant to imprisonment for eight years for the marihuana offense and imprisonment for eight years and a $1,000 fine for the cocaine offense, the two sentences to run concurrently. The First Court of Appeals, with one justice dissenting, upheld the trial court's denial of the motion to suppress on the ground that appellant's subjective expectation of privacy was not one that society was prepared to recognize as reasonable. *Villarreal v. State*, 893 S.W.2d 559 (Tex.App.—Houston [1st Dist.] 1994). We granted appellant's petition to review that decision of the court of appeals. See Tex.R.App. Proc. 200(c)(5). We now affirm.

At the suppression hearing, two witnesses testified regarding matters that related to appellant's standing to assert his constitutional claims. Houston police officer Walter B. Redman testified as follows: At approximately 7:00 p.m., November 20, 1992, an anonymous informant telephoned the Houston Police Department and stated that a large quantity of marihuana would be sold that evening at the Gary Rick Varner residence at 8038 Turquoise Lane. The informant described in detail the buyers and sellers of the marihuana and the vehicles they would be driving. At approximately 9:00 p.m. that evening, two police officers drove by the Varner residence in an unmarked vehicle and confirmed that one of the vehicles described to them by the informant, a blue and gray pickup truck, was parked at the residence. The officers then left the area to confirm other aspects of the informant's tip. The officers returned to the area at approximately 10:30 p.m. and found that the pickup truck had gone. They and several other police officers in other vehicles then set up surveillance of the residence. At approximately 12:15 a.m., the pickup truck returned and stopped in front of the residence. Appellant, who was the driver of the pickup, and two other adult males exited the pickup, unloaded three packages from the bed of the pickup, and proceeded to walk toward the front door of the residence. The police vehicles then converged on the residence. The officers exited their vehicles, identified themselves as police, and instructed the suspects to stop. The suspects turned, saw the officers, and then ran into the residence, closing and locking the door behind them. The officers, after demanding but being denied entrance, forced the door open, entered, and arrested appellant and six other adult males. The officers observed marihuana and several firearms scattered throughout the residence in plain view. A search of the residence uncovered more than $59,000 in cash, and a search of the pickup revealed a "quantity of cocaine," a "pocket gram scale," and an electronic gram scale.

1. Article 38.23(a) provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." The Fourth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, *Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, § 9, provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches."

2. An unconsented police entry into a residence undoubtedly constitutes a "search" within the meaning of the Fourth Amendment and Article I, § 9, with respect to those persons who have a legitimate expectation of privacy in the residence. See *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991).

Appellant's co-defendant, Gary Rick Varner, testified that: (a) appellant, whom he knew "really well," was an "invited guest" in the Varner residence on the evening in question; (b) appellant was in the residence for "one to two hours" early that evening, then left, and then returned "ten or fifteen minutes" before the police arrived;[3] (c) he did not expect appellant to stay overnight that night but appellant "was welcome to stay if he wanted to"; (d) appellant had no personal property in the residence that night; and (e) "everyone" in the residence was "drinking" that night.

The trial court gave no verbal explanation for its denial of appellant's motion to suppress; nor did the trial court enter any findings of fact or conclusions of law into the record. Thus, the record does not reflect whether the trial court denied the motion on the ground that appellant lacked standing or on the ground that the police entry into the Varner residence was reasonable.

The court of appeals upheld the ruling of the trial court on a theory of law applicable to the case, to wit: that appellant had no standing to press his constitutional claims because his subjective expectation of privacy was not one that society was prepared to recognize as reasonable:

> Standing is an individual's right to complain about an allegedly illegal governmental search, and thus to exclude evidence. To have standing to complain about the legality of a governmental search, a person must show that he personally had a reasonable expectation of privacy. *Rakas v. Illinois,* 439 U.S. 128, 143 [99 S.Ct. 421, 430, 58 L.Ed.2d 387] (1978).
>
> * * * * * *
>
> The court of criminal appeals has held that a guest in a hotel room rented by another does not have a reasonable expectation of privacy in that room.
>
> An individual who has no possessory or proprietary interest in the premises, but is a guest, has no clothes in the house, or other belongings, has no legitimate privacy interest in the premises searched. Additionally, an individual has no valid expectation of privacy in a home where he is simply a guest and does not control entrances or exits from the premises.
>
> We have found no precedent that would impute an expectation of privacy for the purposes of standing to an invited guest who is not an overnight guest. We recognize that *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990), found that an overnight guest had a legitimate expectation of privacy in the residence in which he spent the night. We decline to extend this expectation to the more casual visitor such as appellant.
>
> Finding that appellant did not have standing to challenge the search of the Varners' residence, we overrule appellant's four points of error.

*Villarreal v. State,* 893 S.W.2d at 561 (emphasis added; some citations omitted).[4]

Appellant argues now that the court of appeals erred in concluding that he had no legitimate expectation of privacy in the Varner residence. Appellant insists that several "connective factors," i.e., factors that connected him to the Varner residence, demonstrated that he had an actual subjective expectation of privacy in that residence that was, from the viewpoint of American society, reasonable under the circumstances:

> Appellant had a possessory interest in the household premises because of the over six-hour length of his stay, his unrestricted access, and his being accorded by the householder/owner the privilege of staying overnight had he wanted. There is no question that Appellant was legitimately upon the premises, and demonstrated his

3. Thus, a portion of Varner's testimony conflicted with Redman's testimony.

4. We are uncertain that the court of appeals used the correct legal standard. See *Arcila v. State,* 834 S.W.2d 357, 360 (Tex.Crim.App.1992). That court should have focussed on the factors we set out in *Calloway v. State,* 743 S.W.2d 645, 651 (Tex.Crim.App.1988). If the court of appeals meant to suggest that a non-overnight guest can *never* have standing, then it was probably incorrect. See *United States v. Davis,* 932 F.2d 752 (9th Cir.1991) (non-overnight guest has legitimate expectation of privacy in residence under particular facts presented); *Rose v. United States,* 629 A.2d 526 (D.C.App.1993) (same).

right to exclude third parties. Further, Appellant, in concert with his co-defendants, took precautions customarily taken by those seeking privacy by blocking and locking the door of the residence to exclude police and others. The fact that the premises was a private residence demonstrates it was put to private use. Finally, Appellant's claim of privacy is consistent with historical notions of privacy which have been associated with the sanctity of the home as an institution....

Appellant's Brief at 8.

The purpose of both the Fourth Amendment and Article I, § 9, "is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Richardson v. State,* 865 S.W.2d 944, 948 (Tex.Crim.App.1993). An accused has standing, under both constitutional provisions, to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Richardson v. State,* 865 S.W.2d at 948–949; *Fuller v. State,* 829 S.W.2d 191, 202 (Tex.Crim.App.1992). Furthermore, the accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App.1988). To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable.[5] *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Richardson v. State,* 865 S.W.2d at 948–949. The following, at least, are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Calloway v. State,* 743 S.W.2d at 651.

A trial court's ruling on a motion to suppress lies within the sound discretion of that court. At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The reason for this rule is that the trial court, who observes the demeanor and appearance of the witnesses, is in a better position to determine their credibility than the appellate court is by reading their testimony as it appears in the record. Therefore, an appellate court must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, and must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

Viewed in the necessary light, the record evidence and reasonable inferences

5. The court of appeals acted properly in deciding *de novo* the question of whether appellant's subjective expectation of privacy was one that society was prepared to recognize as reasonable, because that question was a question of law. In *Chapa v. State,* 729 S.W.2d 723, 728 n. 3 (Tex.Crim.App.1987), we explained:

> Whether a particular expectation of privacy is one society is willing to recognize [as reasonable] is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular context in which [the defendant] harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to sanction that expectation as reasonable....

Denominating the question as one of law is sensible, because an appellate court is in a better position to decide it correctly than is a trial court. See *Miller v. Fenton,* 474 U.S. 104, 113–114, 106 S.Ct. 445, 451–452, 88 L.Ed.2d 405 (1985); *United States v. McConney,* 728 F.2d 1195, 1200–1204 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

therefrom established that early on the evening in question, appellant was in the Varner residence one or two hours in order to arrange a business transaction, and that he left the residence and returned shortly after midnight, rushing into the residence to avoid arrest. Thus, the evidence established conclusively that appellant did in fact exhibit an actual subjective expectation of privacy in the Varner residence. However, the evidence did not establish that appellant's subjective expectation of privacy was one that society was prepared to recognize as objectively reasonable under the circumstances. Our conclusion is grounded on the *totality* of the circumstances established by the evidence. There was, for example, no evidence that appellant had a property or possessory interest in, or unrestricted access to, the Varner residence. Nor was there any evidence that appellant had dominion or control over the residence, or the right to exclude others. Nor even was there any evidence that appellant intended to stay overnight. In our view, American society is not willing to sanction as objectively reasonable the subjective expectation of privacy of someone who is in a residence under the circumstances presented in this case.

In short, the trial court's ruling on appellant's motion to suppress is supported by the record and is correct on a theory of law applicable to the case. Therefore, the court of appeals did not err in upholding the trial court's ruling. We AFFIRM the judgment of the court of appeals.

MALONEY, J., concurs in the result.

McCORMICK, Presiding Judge, concurring.

I concur with the majority opinion that the ultimate question of appellant's standing to complain about the police entry into Varner's private residence is a "question of law." I write separately to point out that this is consistent with how the United States Supreme Court characterizes analogous issues. See *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). It is difficult to formulate a bright-line rule "that will unerringly distinguish a factual finding from a legal conclusion." See *Miller,* 474 U.S. at 113, 106 S.Ct. at 451. Many cases present issues that some label as "mixed questions of law and fact." See *Miller,* 474 U.S. at 113, 106 S.Ct. at 451.

The amount of deference a reviewing court affords a trial court's ruling on a "mixed question of law and fact," or whether an issue is characterized as one of "law" or "fact," often turns on which "judicial actor is better positioned" to decide the issue in question. See *Miller,* 474 U.S. at 113–14, 106 S.Ct. at 451–52 (when, for example, the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor and resolution of the issue is dispositive of the ultimate constitutional question, there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight). The overriding principle, at least with respect to constitutional questions, is that where the trial court "is not in an appreciably better position" than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions. See *Miller,* 474 U.S. at 110–17, 106 S.Ct. at 450–53.

This does not mean the reviewing court should not "give great weight" to a trial court's "considered [legal] conclusions" or its application of the relevant legal principle to the particular facts of the case. See *Miller,* 474 U.S. at 112–14, 106 S.Ct. at 451. However, appellate courts should not abandon their "primary function as an expositor of law" or their duty to protect our constitutional rights. See *Miller,* 474 U.S. at 114, 116–18, 106 S.Ct. at 451, 453.

The dissenting opinion would hold "the existence of a privacy expectation and its legitimacy are empirical questions to be decided by the factfinder upon the basis of all relevant evidence." See *Villarreal v. State,* 935 S.W.2d 134 (Tex.Cr.App.1996) (Meyers, J., dissenting). This approach comes perilously close to subjecting our constitutional rights too closely to majoritarian political processes and temporary passions of the moment, which is inconsistent with the idea

underlying the Bill of Rights. See, e.g., Article I, Section 29, Tex. Const.; *Ex parte Ainsworth,* 532 S.W.2d 640 (Tex.Cr.App.1976) (legislative amendment may not alter the scope of constitutional protections); *Faulk v. Buena Vista Burial Park Ass'n,* 152 S.W.2d 891, 893–94 (Tex.Civ.App.—El Paso 1941, no writ) (all powers of government are subject to the Bill of Rights); see also *Miller,* 474 U.S. at 116–18, 106 S.Ct. at 453 (circumstances under which police obtain a confession elevate the risk that erroneous resolution of the voluntariness question as a "fact" issue might inadvertently frustrate the protection of our constitutional rights). While at times members of this Court have vehemently disagreed on the exact scope of protection of a particular constitutional provision and I have criticized various opinions of this Court for finding constitutional rights not contained in the literal text of the constitutional provision at issue,[1] a majority of this Court should agree on the principle that whatever bundle of rights a particular constitutional provision guarantees does not involve an "empirical question," at least where resolution of the ultimate constitutional question does not depend upon the factfinder's evaluation of credibility and demeanor. Under these circumstances, appellate courts have the power to decide the issue independently. See *Miller,* 474 U.S. at 110–17, 106 S.Ct. at 450–53.

Also contrary to the position taken by the dissenting opinion, our opinion in this case is consistent with this Court's recent decisions in, and should yield the same results as, *DuBose v. State,* 915 S.W.2d 493 (Tex.Cr.App.1996), and *State v. Carter,* 915 S.W.2d 501 (Tex.Cr.App.1996). In *Carter,* the State presented one witness at the hearing on the defendant's motion to suppress. At the conclusion of the hearing, the trial court stated that "there was not probable cause at all to walk up and begin searching" even with "taking into the account the information from the confidential informant." The trial court made no findings of fact. The State lost in the trial court, and appealed to the Court of Appeals which reversed the trial court. This Court reversed the Court of Appeals because it failed to show the proper amount of deference to the trial court's ruling. The main problem in *Carter* was that the Court of Appeals failed to view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's implied findings on credibility and weight of the evidence. Given the absence of any factual findings, the appellate presumption of the regularity of a trial court's judgment, and which party had the burden of proof, the trial court's implied factual findings were dispositive of the ultimate constitutional question of probable cause. See *Miller,* 474 U.S. at 112–16, 106 S.Ct. at 451–52. The problem in *DuBose* was that the Court of Appeals viewed the facts "myopically" to conclude there was no evidence to support the trial court's judgment; i.e., the Court of Appeals failed to view the evidence in the light most favorable to the trial court's ruling.[2]

I do not read *DuBose* and *Carter* as requiring appellate courts to abandon their role of protecting our constitutional rights. I read these cases as reaffirming our policy, after this Court's recent decision in *Clewis v. State,*[3] that the reviewing court should give

1. See *Bauder v. State,* 921 S.W.2d 696, 706 fn. 5 (Tex.Cr.App.1996) (McCormick, P.J., dissenting) (plain language of Texas' Double Jeopardy Clause merely prohibits the State from prosecuting a defendant for an offense of which the defendant previously has been acquitted); compare *Witte v. United States,* — U.S. —, ——, 115 S.Ct. 2199, 2209–2210, 132 L.Ed.2d 351 (1995) (Scalia, J., concurring in the judgment) (Federal Double Jeopardy Clause merely prohibits the government from *prosecuting* a defendant twice for the same offense).

2. This Court has reversed trial courts' rulings on suppression motions on questions of law under other sets of circumstances. That is where a trial court's express or implied factual findings have not supported its legal conclusions. In such cases, this Court has made an independent determination of the question of "law." This is more or less what happened in cases like *Farmah v. State,* 883 S.W.2d 674 (Tex.Cr.App.1994).

3. See *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996) (permitting appellate courts, in reviewing the sufficiency of the evidence to support the elements of the offense, to second-guess the jury on questions of credibility and weight of the evidence). I read *DuBose* and *Carter* as limiting this Court's holding in *Clewis.* That is the main reason I voted with the majority in these cases. Otherwise, it would make no sense for appellate courts to show more deference to a trial court's

"great weight" to a trial court's "considered [legal] conclusions" while affording total deference to a trial court's credibility and weight determinations. See *Miller,* 474 U.S. at 112–14, 106 S.Ct. at 451. *DuBose* and *Carter* were not intended to effect a sea change in how appellate courts have reviewed trial courts' legal and factual rulings.

Finally, in this case, the trial court was not in an "appreciably better position" than the appellate court to determine whether appellant's expectation of privacy in Varner's residence was one society is prepared to recognize as reasonable. However, this Court has not been persuaded that the Court of Appeals erred to agree with the trial court's implied legal conclusion that, under the factual circumstances of this case, appellant's expectation of privacy in Varner's residence was not one society is prepared to recognize as reasonable. After all, when appellant ran from the police, the police chased appellant from a public place into a private residence not belonging to appellant after the police had just seen appellant involved in criminal activity in the public place.

*Miller v. Fenton* should provide useful guidance to appellate courts in this State on how to characterize an issue as one of "law" or "fact." With these additional comments, I join the majority opinion.

CLINTON, Judge, concurring.

The Court has chosen this cause to broach a fundamental question of appellate review that has eluded our scrutiny for a long time. The question is: What is the proper standard of appellate review for any given application of law to fact (so-called "mixed questions of law and fact"), and how do we tell? As framed by the members of the Court, and by other courts and commentators as well, it boils down to whether some applications of law to fact should be measured on appeal for abuse of discretion, while others are re-determined *de novo* by the appellate court. My own view is that appellate courts should always review trial court applications of law to fact according to the deferential abuse-of-discretion standard, subject only to the occasional plenary review in particular cases in order to accomplish what Professor Monaghan, in an influential law review article, calls "constitutional norm elaboration." See Monaghan, Constitutional Fact Review, 85 Colum.L.Rev. 229 (1985). That is to say, appellate courts should defer to reasonable applications of law to fact at the trial court level unless one or both parties can satisfactorily demonstrate that appellate intervention will help to flesh out and clarify the law in the interest of providing uniformity of results in trial court applications of abstract legal principles to oft-recurring fact patterns. In this respect a court of appeals' decision whether to conduct plenary review of a trial court's application of law to fact is not unlike our own decision whether to examine a court of appeals' opinion on discretionary review under *Arcila v. State,* 834 S.W.2d 357 (Tex. Cr.App.1992). I write separately in order to develop this thesis.

*I.*

*A.*

There is no dispute here as to either the facts or the applicable law. We all agree that appellant must demonstrate not only a subjective expectation of privacy, but also that his expectation was one society recognizes as objectively reasonable. *Chapa v. State,* 729 S.W.2d 723, 727 (Tex.Cr.App.1987). We all agree that in making this assessment, the non-exclusive *Calloway* factors should be taken into account, *viz:* "(1) whether the alleged aggrieved person has a property or possessory interest in the thing seized or the place searched; (2) whether he was legitimately on the premises; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the search, he took normal precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy." *Calloway v. State,* 743 S.W.2d 645, 651 (Tex.Cr.App.1988). The only dispute in this discretionary review regards which court has ultimate responsibility to apply these factors to the facts of this case, to resolve the

"legal" conclusions than the deference they show to a trial court's "factual" conclusions.

question whether this appellant has shown an expectation of privacy society will recognize as reasonable.

Does the trial court have both primary and ultimate responsibility to apply the law to the facts in this instance, subject only to a review for abuse of discretion in the appellate court? Or instead, should an appellate court always, or perhaps only sometimes, conduct its own plenary review of the question whether society accepts the reasonableness of appellant's subjective expectation of privacy, deferring only to the trial court's express or implied resolution of historical fact? It is true that the parties in this cause have not briefed this issue. Nevertheless, after the recent opinions of this Court in *State v. Carter,* 915 S.W.2d 501 (Tex.Cr.App.1996) and *DuBose v. State,* 915 S.W.2d 493 (Tex.Cr.App.1996), it should be apparent that the question of the proper standard of appellate review will arise as an unavoidable threshold matter in a wide variety of contexts, including the present one. We cannot ignore it merely because the parties themselves have not addressed it.

*B.*

Courts usually frame the issue in terms of whether particular mixed questions of law and fact ought to be reviewed *de novo* on appeal, categorically. For example, in *United States v. McConney,* 728 F.2d 1195 (C.A.9 1984), the Ninth Circuit Court of Appeals held that the issue of whether exigent circumstances would justify a warrantless entry under the Fourth Amendment should always be determined by the appellate court in a *de novo* review. Much more recently the United States Supreme Court has held that, at least for purposes of appellate review of federal prosecutions, all determinations of probable cause and reasonable suspicion should be reviewed *de novo. Ornelas v. United States,* 517 U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause and reasonable suspicion "are fluid concepts that take their substantive content from the particular contexts in which [they] are being assessed[,]" the Supreme Court reasoned. *Id.,* —— U.S. at ——, 116 S.Ct. at 1661, 134 L.Ed.2d at 918. *De novo* appellate review is necessary, the Supreme Court concluded, to assure uniformity of application of these fluid concepts from case to case, and to set a firm standard for police conduct. We can achieve the same results, however, without categorically requiring *de novo* appellate review of every case raising a question of probable cause or reasonable suspicion.

In *Carter* and *DuBose* we opted for a standard for review that was perhaps a little too categorical in the direction of deferential review. We stated broadly that review of a trial court's ruling on a motion to suppress should be measured on appeal according to an abuse of discretion standard. Despite the holding of the Supreme Court in *Ornelas v. United States,* supra,[1] I continue to believe that our holdings in *Carter* and *DuBose* make sense, at least as an articulation of a general rule of appellate review, *viz:* that questions of probable cause and consent to search ought ordinarily to be resolved by the trial court, reviewable on appeal only for an abuse of discretion. Indeed, in my view, practically all applications of law to fact should be left to the trial court in the first instance, subject to a deferential standard of appellate review. Only on the relatively infrequent occasion when an already-articulated general principle of law proves inadequate to dictate a result with an acceptable degree of definiteness when applied to a novel-but-likely-to-recur fact pattern is it appropriate for the court of appeals to intervene by way of plenary review. In order to avoid ordinary deferential review on appeal, the losing party at the trial court level should identify in his appellate brief the jurisprudential ad-

1. *Ornelas* involved appeal from a federal prosecution. The Supreme Court held that review of questions of probable cause and reasonable suspicion in the United States Circuit Courts of Appeals should be conducted *de novo.* This holding does not appear to be grounded upon the Fourth Amendment, however, or any other provision of the federal constitution applicable to the states through the Fourteenth Amendment. Nothing else in *Ornelas* leads me to believe the Supreme Court meant to mandate *de novo* review of these issues on direct appeal of state convictions in state appellate courts. I therefore presume that *Carter,* which held that courts of appeals in Texas should review issues of warrantless probable cause according to an abuse of discretion standard, rather than *de novo,* remains the law.

vantage of *de novo* review of his particular case. He should be prepared to argue how appellate application of the law to the facts of his case will facilitate a clearer understanding of the law that will foster greater uniformity of result thereafter at the trial court level. Absent such a showing, the presumptive appellate standard for review should be abuse of discretion. In this way appellate courts can supply any "constitutional norm elaboration" that is called for, *Monaghan, ante,* at 3, but defer to the trial court's application of law to fact in the ordinary run of cases.

It occurs to me that the question of appropriate appellate standard of review is functionally identical to another threshold question that we confront on this Court every day, *viz:* whether this Court should exercise its discretionary review authority to examine a court of appeals opinion under our holding in *Arcila v. State,* 834 S.W.2d 357 (Tex.Cr. App.1992). When a given area of the law is definite and well-settled, it makes sense to subject that application of law to facts to a deferential standard of review on direct appeal. After all, if the law requires no greater elaboration, then the trial court is in at least as good a position reliably to apply it to the facts as an appellate court would be, and there is no compelling reason to require, or even allow, plenary review at the appellate level. In the premises it is also unlikely that we could say that granting discretionary review of the court of appeals' deferential review would contribute anything of lasting significance to the jurisprudence of the state. "Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications." *Arcila v. State,* supra, at 360.

However, deferential appellate review is not appropriate for every application of law to fact. Some areas of the law are as-yet unsettled. Others are by nature not susceptible to precise or definite abstract articulation. When a new fact pattern arises that tests the boundaries of legal generalization, it may be appropriate for an appellate court to step in and, in the interest of setting guideposts for the trial courts, to say how the law should apply to that fact pattern. Especially if the new fact pattern is likely to be a recurring one, the case is ripe for appellate application of law to fact. It is not coincidental that these are also the cases over which exercise of our discretionary review power is most efficacious. For only in such cases will discretionary review, like direct appellate review, yield clarification of the law, and hence, uniformity of result in the lower courts.

*II.*

The court of appeals in this cause essentially conducted a *de novo* review. After rehearsing the historical facts of the case (in the light most favorable to the trial court's presumed ruling that appellant had no standing), the court of appeals "found" appellant had no standing to challenge police entry into a residence in which he was a mere guest. The court of appeals did not inquire whether it had been rational for the trial court so to have "found." Thus, although the court of appeals reached the same conclusion as the trial court, it accorded no particular deference to that court, instead applying the law to the facts in plenary fashion.

Along the way the court of appeals distinguished *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), in which the United States Supreme Court essentially conducted its own *de novo* review of whether, on the facts of that case, the defendant had shown a reasonable expectation of privacy. The critical question in *Olson* was whether an overnight guest in a home had standing to challenge the warrantless entry into his host's home in order to arrest him by simple virtue of his status as overnight guest. The State had argued that a mere overnight guest, unless he has exclusive control of the premises, cannot have a legitimate expectation of privacy. The Supreme Court rejected exclusive control as a determinative fact, observing that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society." *Id.,* 495 U.S. at 98, 110 S.Ct. at 1689, 109 L.Ed.2d at 94. The Court emphasized that "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." *Id.,* 495 U.S. at 99, 110 S.Ct. at

1689, 109 L.Ed.2d at 94. For this reason privacy in the place where we sleep is an interest society is willing to recognize, even if that privacy derives not from a place of one's own, but rather from the grace of extended family or friends. Accordingly the Supreme Court held that *Olson* (and hence, via *stare decisis,* every similarly situated future litigant) had standing to "claim the protection of the Fourth Amendment." *Id.,* 495 U.S. at 100, 110 S.Ct. at 1690, 109 L.Ed.2d at 95.

This Court has also conducted *de novo* review of the question whether, on a particular set of facts, a defendant can assert a legitimate expectation of privacy. In *Chapa v. State,* 729 S.W.2d 723 (Tex.Cr.App.1987), we addressed the question whether a passenger in a taxicab harbors a reasonable expectation of privacy in the cab's interior. We conducted what amounts to a plenary review of that question, and held that the passenger "qua fare in a taxicab" did have a reasonable expectation of privacy. *Id.,* at 729. In a footnote, in response to criticism that we had improperly noticed several local ordinances regarding a passenger's right to exclusive use of a taxicab, we stated: "Whether a particular expectation of privacy is one society is willing to recognize ... is in the nature of a legal rather than a factual inquiry." *Id.,* at 728, n. 3. Because we regarded the question as more legal than factual, we were at liberty to judicially notice the ordinances as "legislative" facts, rather than "adjudicative" facts. They were relevant to our *de novo* determination whether the taxicab passenger's subjective expectation of privacy was accepted by society. It was more in the nature of a legal than a factual question precisely because we had determined (having granted discretionary review in the first instance) that the facts were novel enough, yet likely enough to recur, to justify plenary review of the question in the interest of constitutional norm elaboration. As in *Olson,* it was important to say how the law applied to the facts in order to supply a benchmark to help lower courts uniformly apply the more abstract, general rule of law.

Unlike *Olson* and *Chapa,* the instant case is not so factually distinctive, it seems to me, as to invoke plenary appellate review. Appellant was arrested in somebody's home; but it was not his own home, and so *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), does not require a warrant as a matter of law. It is clear enough to me that the Supreme Court's norm elaboration in *Olson* was limited to holding that a houseguest who actually plans to stay overnight has a legitimate expectation of privacy in his host's home. After all, the Supreme Court took pains to emphasize the privacy aspect of the place where one is allowed to sleep. *Olson* does not stand for the proposition that a momentary visitor in the home who, the host maintains, *could* spend the night if he desired, has necessarily demonstrated a reasonable expectation of privacy. The facts of this case are not so unusual, or so likely to recur, as to call for an appellate articulation of how general principles of standing ought particularly to apply. In my view there was no need for *de novo* review.

The trial court could reasonably have concluded, applying the factors of *Calloway,* that appellant demonstrated no reasonable expectation of privacy in the home that was searched. That appellant momentarily entered the front door of a house he has not shown he will spend the night in does not unequivocally establish a legitimate expectation of privacy in the whole premises. The trial court did not abuse its discretion to conclude appellant had no standing to challenge the search of the house.

The court of appeals reached the same conclusion in its *de novo* application of the law to the facts. Now this Court, after correctly observing (in my view) that a non-overnight guest does not necessarily *lack* standing as a matter of law, essentially conducts its own plenary review, also concluding that under the circumstances of this case appellant has not demonstrated a reasonable expectation of privacy. Plurality opinion at 137, n. 4, & at 138–139, respectively.[2] *A*

2. At least the plurality *says* it is conducting a *de novo* review. Plurality opinion at 138, n. 5. Other language in the plurality opinion, however, engenders doubt. For example, the plurality announces that an appellate court "must sustain the trial court's *ruling* if it is reasonably supported by the record ...," and concludes that "the trial court's *ruling* ... is supported by the

*fortiori*, both appellate courts have thus concluded the trial court did not abuse its discretion. There is no need to remand the cause to the court of appeals to conduct a deferential review.[3]

I therefore concur in the result.

KELLER, J., concurring.

I write separately to address how an appellate court should review a factfinder's determination concerning whether an appellant's subjective expectation of privacy is one that society is willing to recognize as reasonable. I strongly disagree with Judge Meyers' claim that the reasonableness of a defendant's expectation of privacy should be resolved by the factfinder as an "empirical matter."

Appellate courts generally review two types of questions: questions of fact and questions of law. Questions of fact are subject to a deferential sufficiency review: an appellate court merely attempts to determine whether the evidence contained in the record supports (sufficiently) the factual conclusions determined by the trier of fact. On the other hand, questions of law are reviewed *de novo* by the appellate tribunal. But most issues submitted to a factfinder contain both factual and legal elements. These issues are commonly referred to as questions regarding the "application of law to fact" or "mixed questions of law and fact." When a jury is called upon to decide one of these mixed questions (e.g. guilt-innocence), the trial judge has the responsibility to instruct the jury on all of the legal issues contained in it. The jury then determines the facts and applies the instructions given by the trial judge. In a motion to suppress context the trial judge occupies the roles of both factfinder and lawgiver. While issues of fact and law may be imbedded within a singularly phrased question, appellate courts must nevertheless separate the legal and factual elements contained in that mixed question and review each according to the appropriate standards. *Thompson v. Keohane*, — U.S. —, — —, 116 S.Ct. 457, 465–466, 133 L.Ed.2d 383 (1995). *Miller v. Fenton*, 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985).

The second prong of the Fourth Amendment standing test for searches—whether a defendant's subjective expectation of privacy is one that society is willing to recognize as reasonable—is one of these "mixed" questions. Imbedded in this mixed question are two subsidiary questions: (1) what are the circumstances giving rise to the defendant's subjective expectation of privacy, and (2) is society willing to recognize those circumstances as giving rise to a reasonable expectation of privacy? The first is a question of fact; the second is a question of law. *Accord Chapa v. State*, 729 S.W.2d 723, 728 n. 3 (Tex.Crim.App.1987). *See also Thompson*, — U.S. at —, 116 S.Ct. at 465.

The majority cites six factors from *Calloway v. State*, 743 S.W.2d 645, 651 (Tex.Crim.App.1988) as relevant to "proof" of a legitimate expectation of privacy. While the first five factors involve circumstances that give

record...." Plurality opinion at 138 & 139, respectively (emphasis supplied). This sounds like deference to me, not just to the trial court's historical factfinding, but to his application of law to fact as well. But regardless of whether the plurality's review is deferential or *de novo*, it amounts to an endorsement of the reasonableness of the trial court's presumptive conclusion that appellant lacked standing.

3. This is not to say that I either agree or disagree with the plurality's *de novo* decision today that society is unwilling to accept appellant's subjective expectation of privacy in this cause. Plurality opinion at 139. I do not think this Court need resolve that question to dispose of this cause. The question whether society is willing to accept a particular expectation of privacy as reasonable, *vel non*, will often be, as it was in *Chapa*, more a matter of resolving "legislative" than "adjudicative" facts. When that is so, it may often be the case that an appellate court will have at least as good a vantage, if not better, from which to resolve the question. In that event it is appropriate for a court of appeals to review the question as a plenary matter, subject then to this Court's plenary review on petition for discretionary review. I am satisfied this is not such a case. I therefore do not join the plurality opinion. Given, however, that in conducting their respective *de novo* reviews, both this Court and the court of appeals have concluded that appellant enjoyed no reasonable expectation of privacy, the court of appeals could not logically hold on remand that the trial court abused its discretion to conclude the same. For this reason I too would affirm the court of appeals' judgment, notwithstanding its application of an erroneous standard of review.

rise to a defendant's subjective expectation of privacy, and hence, may be characterized as factual in nature, the sixth factor relates solely to society's viewpoint, a legal question. A defendant does not have a burden to prove the legitimacy of his expectations. His burden is to prove that he had a subjective expectation of privacy and to prove the facts upon which he based that expectation. It is up to the courts to say whether those facts create a legitimate expectation of privacy, and thus confer standing. *Calloway* does not hold otherwise—the opinion lists the six factors as "factors which should be considered in making the determination whether an accused has 'standing.'" *Id.* at 651. *Calloway* did *not* hold that it was the defendant's burden to prove those factors. Although *Calloway* does say the defendant "bears the burden of proving that he had a legitimate expectation of privacy," *id.* at 650, *citing Wilson v. State,* 692 S.W.2d 661, 667 (Tex. Crim.App.1984), it is clear from the paragraphs following that statement that the opinion refers to the circumstances upon which the expectation of privacy is based (i.e. the first subsidiary question). 743 S.W.2d at 650.

I cannot agree with Judge Meyers when he says that in reviewing the factfinder's determination of standing or lack of standing, "[A]ppellate courts should [not] engage in a dynamic application of ... any ... legal rule to the facts of [a] case." Judge Meyers says that we should review such determinations by "a different and more deferential standard." *Villarreal v. State,* 935 S.W.2d at 154 (Meyers, J., dissenting). We should not.

Whatever degree of deference we give with regard to the determination of a question of fact, we will, up to a point, necessarily give to a legal conclusion based upon that fact question. It cannot be otherwise because the legal conclusion has as one component that fact determination. But, Judge Meyers' dissent ignores the second component that circumscribes the factfinder's discretion—the law. Judge Meyers would allow the factfinder to determine standing as an empirical matter similar to the approach taken to defining "contemporary community standards" in an obscenity prosecution. As in obscenity prosecutions, Judge Meyers presumably would permit the defendant to introduce evidence of society's attitudes and expectations. *See Kaplan v. Calif.,* 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492 (1973)(defense should be permitted to introduce expert testimony concerning contemporary community standards in obscenity prosecution). *Berg v. State,* 599 S.W.2d 802, 805 (Tex.Crim.App.1980)(defense should be permitted to introduce material evidencing society's standards, such as other publications circulated within the community, in obscenity prosecution).

This empirical approach is misguided. Whether society is willing to recognize a particular set of circumstances as involving a reasonable expectation of privacy has always been treated as a question of law by the United States Supreme Court. There are numerous examples where the Supreme Court has conducted a *de novo* review of whether a particular set of factual circumstances gave rise to a reasonable expectation of privacy. *Minnesota v. Olson,* 495 U.S. 91, 96–100, 110 S.Ct. 1684, 1687–1690, 109 L.Ed.2d 85 (1990)(overnight guest has a reasonable expectation of privacy in the home in which he stays). *Skinner v. Railway Labor Exec. Assn.,* 489 U.S. 602, 616–617, 109 S.Ct. 1402, 1412–1413, 103 L.Ed.2d 639 (1989)(a person has a reasonable expectation of privacy with regard to tests of his blood and urine). *Florida v. Riley,* 488 U.S. 445, 449–452, 109 S.Ct. 693, 696–698, 102 L.Ed.2d 835 (1989)(no reasonable expectation of privacy from aerial surveillance of areas open to view from the air). *Calif. v. Greenwood,* 486 U.S. 35, 40–43, 108 S.Ct. 1625, 1628–1630, 100 L.Ed.2d 30 (1988)(no reasonable expectation of privacy in discarded garbage). *O'Connor v. Ortega,* 480 U.S. 709, 716–719, 107 S.Ct. 1492, 1497–1498, 94 L.Ed.2d 714 (1987)(whether there is a reasonable expectation of privacy in the government workplace and the extent of that privacy must be determined on a case-by-case basis; the Court determined that there was a reasonable expectation of privacy under the circumstances presented). *Hudson v. Palmer,* 468 U.S. 517, 525–528, 104 S.Ct. 3194, 3199–3201, 82 L.Ed.2d 393 (1984)(no reasonable expectation

of privacy in prison cell). *Oliver v. United States,* 466 U.S. 170, 178–181, 104 S.Ct. 1735, 1741–1743, 80 L.Ed.2d 214 (1984)(no reasonable expectation of privacy in open fields, but there is a reasonable expectation of privacy in curtilage surrounding the home). *Michigan v. Clifford,* 464 U.S. 287, 292 & 295, 104 S.Ct. 641, 646 & 647–648, 78 L.Ed.2d 477 (1984)(whether a reasonable expectation of privacy remains in a home damaged by fire depends upon the extent of damage; the Court found that there was a reasonable expectation of privacy under the circumstances presented). *Katz v. United States,* 389 U.S. 347, 360–361, 88 S.Ct. 507, 516–517, 19 L.Ed.2d 576 (1967)(Harlan, J. concurring)(reasonable expectation of privacy in telephone conversations from telephone booth).

While most of these cases announced bright-line rules, *Ortega* and *Clifford* recognized that some situations require a case-by-case approach. Nevertheless, in all of the above-cited cases, the Supreme Court decided on a *de novo* basis whether the fact situation presented gave rise to an expectation of privacy that society is willing to recognize as reasonable. Once the Supreme Court holds that a particular factual circumstance does or does not give rise to a reasonable expectation of privacy, that determination is not subject to re-evaluation by a factfinder on the basis of evidence presented in the case before the factfinder. For example, a factfinder is not at liberty to decide that society now recognizes a reasonable expectation of privacy in aerial surveillance, discarded garbage, prison cells, or open fields. Nor may a factfinder decide that society now refuses to recognize a reasonable expectation of privacy for overnight guests, with regard to blood and urine tests, or in telephone conversations. These issues have been decided as questions of law. Even in the case-by-case opinions, the Supreme Court decided as a question of law whether the particular case involved a reasonable expectation of privacy. Once decided, other cases involving the same circumstances must be decided the same way—the factfinder has no discretion to decide otherwise. The Supreme Court has merely decided not to formulate a general, bright-line rule for the category of circumstances involved but to permit the later development of legal precedent to address factual variations that may occur. *See also Thompson,* — U.S. at —, 116 S.Ct. at 467 ("case-by-case elaboration when a constitutional right is implicated may more accurately be described as law declaration than as law application"). Recently, the Supreme Court has expressly recognized that, on petition for certiorari, it has engaged in *de novo* review of state court determinations concerning whether a particular set of circumstances gave rise to reasonable suspicion. *Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996), *citing Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The Court held that federal appellate courts must conduct a *de novo* review of probable cause and reasonable suspicion determinations even though the questions involved are "fluid concepts" that "are not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas,* — U.S. at —, 116 S.Ct. at 1661 (internal quotation marks omitted). The probable cause/reasonable suspicion issue is analytically similar to the question about society's reasonable expectation of privacy. Both are Fourth Amendment questions that turn upon objective determinations.

Where the fact situation is one of first impression—either because the case is one which may be susceptible to a bright-line rule where no rule has yet been formulated or because a case-by-case category is involved where the specific fact-situation has not been addressed—then evidence of society's attitudes and expectations may be helpful to the court in determining, as a legal matter, whether the case involves a reasonable expectation of privacy. Whether a case of first impression involves a reasonable expectation of privacy, and whether a bright-line rule or a case-by-case approach should be applied, must necessarily be determined on a case-by-case basis:

> We have no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable. Instead, "the *Court* has given weight to

such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion." [Citation omitted].

*Ortega,* 480 U.S. at 715, 107 S.Ct. at 1496 (Emphasis added). But, as the Supreme Court authorities show, once a legal rule has been fashioned, that rule controls all future cases involving the facts covered by the rule, and the only question for the factfinder is whether the facts fit the legal rule established.

Moreover, the question in this case—whether the circumstances give rise to a reasonable expectation of privacy—is very similar to other questions which the Supreme Court has expressly held to be questions of law subject to independent review: (1) the "in custody" determination under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and (2) the voluntariness of a confession, (3) the effectiveness of counsel, (4) the potential conflict of interest arising out of an attorney's representation of multiple defendants, and (5) determinations of probable cause and reasonable suspicion. *See Thompson,* — U.S. at —, 116 S.Ct. at 465 (issues 1–4). *Ornelas,* generally (issue 5). In all of these situations, the Supreme Court held that the "what happened" issues were factual and subject to deference but that the "ultimate question" was subject to independent review because of its "uniquely legal dimension." *Thompson,* — U.S. at —, 116 S.Ct. at 465, *citing Miller,* 474 U.S. at 116, 106 S.Ct. at 452–453. *See also Ornelas,* — U.S. at — - —, 116 S.Ct. at 1661–1662.

Further, as Judge McCormick says in his concurring opinion, *DuBose v. State,* 915 S.W.2d 493 (Tex.Crim.App.1996) and *State v. Carter,* 915 S.W.2d 501 (Tex.Crim.App.1996) were not intended to change the manner in which appellate courts review trial courts' decisions. Those cases just restate what has always been the rule regarding an appellate court's deference to a trial court's decision. They simply say that the appellate court gives deference to the trial court, reversing a decision only if the lower court applied an erroneous legal standard or if the facts cannot support the legal conclusion. This is not new. *Carter* and *DuBose* were not intended to and did not undermine older decisions.[1]

I also agree with Judge McCormick's discussion and argument, based upon *Miller,* that the reasonable expectation of privacy question must be treated as one of law to avoid "subjecting our constitutional rights too closely to majoritarian political processes and temporary passions of the moment" and because trial courts are not in a better position than appellate courts to determine this matter. I would add that treating the question as one of law would also serve to "guide police, unify precedent, and stabilize the law." *Thompson,* — U.S. at —, 116 S.Ct. at 467. Even a case-by-case approach of *de novo* review permits judges to "identif[y] recurrent patterns" and "advanc[e] uniform outcomes. If they cannot supply a 'definite rule,' they nonetheless can reduce the area of uncertainty." *Id.* at — n. 13, 116 S.Ct. at 466 n. 13.

In his concurring opinion, Judge Clinton argues that appellate courts need only employ *de novo* review on an occasional basis, to set up "guideposts" to follow. He contends that we can achieve uniformity of application by limiting *de novo* review to "novel-but-likely-to-recur" fact patterns. Whatever the merits of this view as a general proposition, it seems ill-suited to questions concerning reasonable expectations of privacy. Like the

1. There is some language in both opinions which suggests that appellate courts should defer to a trial court's determination of the legal significance of the facts presented. *DuBose,* 915 S.W.2d at 496. *Carter,* 915 S.W.2d at 504. But it is clear to this writer that, in both cases, the courts of appeals erred by conducting a *de novo* review of the *facts* and/or the *inferences* obtained from those facts and not merely of the law. *See DuBose,* 915 S.W.2d at 497 & 497 n. 6. *Carter,* 915 S.W.2d at 503–504. A *de novo* review of the *facts* is typically reserved for claims involving First Amendment freedoms. *See City of Houston v. Hill,* 482 U.S. 451, 458 n. 6, 107 S.Ct. 2502, 2507 n. 6, 96 L.Ed.2d 398 (1987). *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 506–511, 104 S.Ct. 1949, 1962–1965, 80 L.Ed.2d 502 (1984). *Letter Carriers v. Austin,* 418 U.S. 264, 282, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974).

reasonable suspicion/probable cause determination, whether society recognizes an expectation of privacy as reasonable is a legal rule that acquires content only through application. *See Ornelas,* — U.S. at ———, 116 S.Ct. at 1661–1662. Judge Clinton's proposed standard would be adequate if appellate courts wished only to craft bright-line rules. But, as the previous discussion in this opinion shows, bright-line rules are not always appropriate. Where a case-by-case approach is warranted, it seems odd to attempt to ascertain whether one particular fact situation deserves special treatment while another deserves only deferential review. Such an attempt would likely cause the search for a standard of review to degenerate into a mere *ad hoc* determination. Moreover, in an area of law subject to a case-by-case approach, minor differences may change the outcome. *De novo* review is therefore "necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Id.*

The present case is a good example of the hazards of a policy of engaging in "occasional" *de novo* review. While Judge Clinton believes that this case is not important enough to analyze *de novo,* I would point out that there is a large degree of uncertainty in the law concerning the treatment of non-overnight guests. The present situation, analyzed from a *de novo* perspective, would help reduce uncertainty in this area. While my criticism might be characterized as a mere disagreement on whether the present case is important enough to warrant *de novo* review, I think the disagreement itself illustrates the difficulty inherent in attempting to apply Judge Clinton's "guidepost" principle. More importantly, though, all cases that involve minor variations are useful in narrowing the area of uncertainty, and if two cases are identical, there is no reason to decide them differently. *Ornelas,* — U.S. at ———, 116 S.Ct. at 1661–1662.

Further, it is clear from *Miller, Thompson, Ornelas,* and other Supreme Court cases, that *de novo* review of whether certain circumstances give rise to a reasonable expectation of privacy is mandated at every point in the federal system whether the case comes by way direct appeal, by certiorari from a state or federal court judgment, or by habeas corpus from a state or federal conviction. Although the standard of review in a Fourth Amendment context *may* be characterized as a mere procedural requirement, and therefore not mandated upon the states, *see Goeke v. Branch,* 514 U.S. ——, ——, 115 S.Ct. 1275, 1277, 131 L.Ed.2d 152, 158 (1995) and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Supreme Court authority should at least be given serious consideration when formulating rules relating to *federal* constitutional provisions. I see no persuasive reason to deviate from the federal standard of *de novo* review as it relates to the issues before us.

The question remains: what rule do we formulate in the present situation? While the Supreme Court has drawn a bright-line rule holding that an overnight guest has a reasonable expectation of privacy, the Court has not drawn such a bright-line rule with respect to a non-overnight guest. The majority acknowledges that a non-overnight guest may have standing, depending on the circumstances, majority op. at footnote 4, but, without establishing a bright-line rule, holds that the facts in this case do not establish standing. I agree with the majority's approach and with its conclusion. The present situation seems to be similar to the government employee scenario in *Ortega,* in that it does not appear to lend itself readily to bright-line rules. Given the wide variety of circumstances that might involve non-overnight guests who arrange and conduct business transactions, I am unwilling to hold that such a non-overnight guest could never have an expectation of privacy. Instead, I would hold that whether a non-overnight guest has a reasonable expectation of privacy is a question of law to be decided on a case-by-case basis, using appropriate factors such as those recognized in *Calloway.* Applying those factors, I agree with the majority that the non-overnight guest in the present case did not have a reasonable expectation of privacy under the circumstances shown.[2] The "circum-

2. I agree with the majority, that "society" in this context means *American* society. *See Greenwood,* 486 U.S. at 43–44, 108 S.Ct. at 1630–1631. Appellant makes an interesting argument that the

stances shown," being a subsidiary factual inquiry, are those supported by the evidence viewed in the light most favorable to the trial court's ruling.

With these comments, I join the Court's opinion.

BAIRD, Judge, dissenting.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[1] The circumstances under which the State may conduct a search are very narrow. The power to search is limited to searches authorized by a warrant which sets out the scope and limitations of the search, or without a warrant when exigent circumstances permit. *Katz,* 389 U.S. at 356–57, 88 S.Ct. at 514. Nevertheless, an individual must have standing to contest the admissibility of the fruits of a search.

### I. Standing

Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court. BLACK'S LAW DICTIONARY 1405 (6th ed.1990). To challenge the alleged unlawful conduct, an individual must have a legally protected right. In the context of searches, the legally protected right is the expectation of privacy. Whether one has a legitimate expectation of privacy involves a two-prong inquiry. The first inquiry asks whether the defendant had a subjective expectation of privacy in the place searched. If the answer to the first inquiry is yes, then we proceed to the second inquiry which asks whether society recognizes the defendant's expectation of privacy as reasonable. *Chapa v. State,* 729 S.W.2d 723, 727 (Tex.Cr.App. 1987).[2] *See also, Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring); *and, Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990).

#### A. Subjective Expectation of Privacy

In *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court considered whether an individual had standing to challenge the search of a house that was not his home. The defendant was staying in the home of a friend when the police searched the home and found narcotics. The Court held the issue of standing was determined by whether the individual arrested was a "person aggrieved" by the search. *Jones,* 362 U.S. at 265, 80 S.Ct. at 733. The Court found it dispositive that at the time of the arrest the defendant had permission to stay in the home, had personal possessions located in the home and pos-

Texas Constitution confers broader protection. He suggests that the proper focus of the Texas constitutional provision is Texas society, as opposed to American society, and that Texas society recognizes a more expansive tradition of hospitality than the country as a whole ("Mi casa es su casa"). However, even if appellant's contention were true (and I express no opinion in that regard), the circumstances of the business transaction present in this case do not implicate the notions of hospitality referred to by appellant.

1. U.S. Const. amend. IV provides:

> The right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures, shall not be violated,* and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment is applied to the States through the Fourteenth Amendment. *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949) (application of Fourth Amendment to States); *and, Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) (application of the exclusionary rule to the States).

The Texas Constitution contains a similar restriction upon the power of the State to search its citizens. Art. I, § 9 provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

2. In *Chapa,* 729 S.W.2d at 727, we stated:

> ... The litmus for determining existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did he exhibit by his conduct "an actual (subjective) expectation of privacy;" and second, if he did, was that subjective expectation "one that society is prepared to recognize as 'reasonable.'"

sessed a key for his personal use. The Court held:

> ... No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that *anyone legitimately on premises where a search occurs may challenge its legality* by way of a motion to suppress, when its fruits are proposed to be used against him.

*Id.,* 362 U.S. at 267, 80 S.Ct. at 734.[3] Therefore, the Supreme Court has recognized an individual's right to contest a search conducted at a home not his own.

In *Katz,* the Court re-examined the holding of *Jones.* The Court held the government's activities in electronically listening to and recording an individual's conversation in a public telephone booth violated the individual's expectation of privacy and thus violated the Fourth Amendment. The Court stated:

> ... the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. *But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.*

*Katz,* 389 U.S. at 351–52, 88 S.Ct. at 511 (internal cites omitted). The Court determined the defendant justifiably relied upon the privacy of the telephone booth to exclude the "uninvited ear." *Id.,* 389 U.S. at 352, 88 S.Ct. at 511.[4] Thus in *Katz,* the Supreme Court determined the defendant's subjective intent was crucial to the determination of reasonable expectation of privacy. *Ibid.*

When considering the subjective prong, it is important to remember that the rights secured by the Fourth Amendment are personal. In other words, the defendant must assert his own legal rights rather than base his claim for relief upon the rights of a third party. *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1979).

### B. Objective Recognition of a Privacy Interest

It is not enough that an individual desired or anticipated that he would be free from government intrusion. Rather, for an individual to receive the protection of the Fourth Amendment, the expectation of privacy must be one that society is prepared to recognize as reasonable. In *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the defendant was suspected of being the driver of a getaway car. *Id.* at 93, 110 S.Ct. at 1686. The police surrounded the home where the defendant was suspected to be hiding. *Id.* at 94, 110 S.Ct. at 1687. The police entered the home without a warrant or permission of the home owner and arrested the defendant. *Id.* at 94, 110 S.Ct. at 1687. The defendant was an overnight guest in the home at the time of the arrest. *Id.* at 93–94, 110 S.Ct. at 1686. The Court stated:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share.
>
> *     *     *     *     *     *
>
> ... we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.

*Olson,* 495 U.S. at 98, 110 S.Ct. at 1689. The Court examined the surrounding circumstances and the defendant's attempts to secure his privacy in determining whether the defendant had a reasonable expectation of privacy in the home. *Id.* 495 U.S. at 97, 110 S.Ct. at 1688. The Court noted that an overnight guest's expectation of privacy is rooted in "understandings that are recognized and permitted by society." *Id.* 495 U.S. at 100, 110 S.Ct. at 1690; *citing, Rakas,* 439 U.S. at 144, n. 12, 99 S.Ct. at 431, n. 12.

In *Crosby v. State,* 750 S.W.2d 768 (Tex. Cr.App.1987), we held the search of the de-

3. All emphasis is supplied unless otherwise indicated.

4. The Court listed other cases where an individual has a justifiable expectation of privacy. *Silverthorne Lumber Co., Inc. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (expectation of privacy in a business office); *and, Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960) (expectation of privacy in taxicab). *See also, Chapa,* 729 S.W.2d at 727 (same).

fendant's dressing room on the premises of a nightclub was unlawful. The defendant was in his dressing room, which was set apart from the stage area and screened from prying eyes by a drawn curtain. *Id.* at 771, 773. A sentry was placed in front of the curtain to keep unwanted individuals from entering the dressing room. *Ibid.* The police, in conducting an administrative search of the establishment, entered the dressing room and observed the defendant in possession of drug paraphernalia and arrested him.[5] *Id.* at 771. Using the test from *Chapa* and *Rakas,* we held the defendant's subjective expectation of privacy in the confines of the dressing room was the kind of privacy expectation that society recognized as reasonable. *Crosby,* 750 S.W.2d at 778.

II. The Instant Case

A. The Trial Court

Appellant was arrested without a warrant in the home of Gary Rick Varner. The police received an anonymous tip describing appellant and two other individuals and detailing their involvement in a drug transaction to be conducted at this home. The police drove past Varner's home and observed a vehicle which matched the description given by the informant. The police left and returned later that evening, at which time they observed the vehicle was no longer at the scene. Appellant and two others returned in the vehicle, unloaded bags and walked toward the home. The police identified themselves, confronted appellant and the others outside of the Varner home and asked them to stop. However, appellant and the two other individuals entered the home and locked the door. The police attempted to enter the home and, after being refused entry, forcibly opened the door. The subsequent search of the Varner home resulted in appellant being arrested and charged with the instant offense.

B. The Court of Appeals

The Court of Appeals held appellant did not have a subjective expectation of privacy and, therefore, had no standing to challenge the search of the Varner home. *Villarreal v. State,* 893 S.W.2d 559, 561 (Tex.App.—Houston [1st Dist.] 1994). In reaching this conclusion, the Court of Appeals stated:

> An individual who has no possessory or propriety interest in the premises, but is a guest, has no clothes in the house, or other belongings, has no legitimate privacy interest in the premises searched. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App. 1988). Additionally, an individual has no valid expectation of privacy in a home where he is simply a guest and does not control entrances or exits from the premises. *Black v. State,* 776 S.W.2d 700, 701 (Tex.App.—Dallas 1989, pet. ref'd).
>
> We have found no precedent that would impute an expectation of privacy for the purposes of standing to an invited guest *who is not an overnight guest.* We recognize that *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990) found that an overnight guest had the legitimate expectation of privacy in the residence in which he spent the night. *United States v. Wilson,* 36 F.3d 1298, 1302 (5th Cir.) We decline to extend this expectation to the more casual visitor such as appellant.

*Villarreal,* 893 S.W.2d at 561.

We granted review to determine the correctness of that holding. The issue, therefore, is whether a non-overnight guest may have legitimate expectation of privacy, i.e., standing to challenge the search of a home not his own.[6]

I differ with the Court of Appeals' reasoning in at least three respects. First, there is no requirement that the guest have the legal authority to determine who may or may not enter the household. *Olson,* 495 U.S. at 99, 110 S.Ct. at 1689. Accordingly, that portion

5. T.A.B.C. § 101.04 authorizes administrative inspections of any premises that sell alcohol beverages. T.A.B.C. § 104.01(9) imposes a duty to insure no licensee possesses a narcotic or any equipment used or designed for the administering of a narcotic.

6. Specifically, appellant's ground for review contends: "The Court of Appeals erred in holding that the petitioner did not have standing to contest an illegal intrusion and search of a residence in which he was an invited guest."

of the third factor of *Calloway, supra,* is no longer relevant.

Second, I find the case of *Rose v. United States,* 629 A.2d 526 (D.C.App.1993) persuasive. The *Rose* Court stated:

> In *Martin* [*v. United States,* 567 A.2d 896] at 902–03 [(D.C.App.1989)], we concluded that a part-time resident of his grandparents' home had a protected privacy interest in that home. More recently, the Supreme Court held in *Olson* that an overnight guest had a legitimate expectation of privacy in the premises, sufficient to give him standing to challenge a warrantless entry and arrest. We did not intend our ruling in *Martin,* nor do we understand the Supreme Court's holding in *Olson* to mean that overnight guests status, at the very least, is a *sine qua non* of standing to challenge a search or seizure in a residence other than one's own home. It remains true, of course, that in order to establish standing to challenge a search or seizure, a visitor in another's home bears the burden of showing that the visitor had a reasonable expectation of privacy in that home. *See Prophet v. United States,* 602 A.2d 1087, 1091 (D.C.App.1992). But being an overnight guest is *not* the sole means by which a guest may satisfy that burden.

*Rose,* 629 A.2d at 530–31.

Third, I agree with the majority's holding: "the evidence established conclusively that appellant did in fact exhibit an actual subjective expectation of privacy in the Varner residence." *Ante,* 935 S.W.2d at 138.

### III. This Court's Lead Opinion

The majority holds: "[T]he evidence did not establish that appellant's subjective expectation of privacy was one that society was prepared to recognize as objectively reasonable under the circumstances." *Ante* at 138. The majority does not cite a single case for this holding. Indeed, there is no authority to support this conclusion.[7]

When considering whether a guest has an expectation of privacy that society is willing to recognize as reasonable, the *Olson* Court observed:

> ... The houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest. It is unlikely that the guest will be confined to a restricted area of the house; and when the host is away or asleep, the guest will have a measure of control over the premises. The host may admit or exclude from the house as he prefers, but it is unlikely that he will admit someone who wants to see or meet with the guest over the objection of the guest.... The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household.

*Olson,* 495 U.S. at 99, 110 S.Ct. at 1689. Undoubtedly, the same can be said of a non-overnight guest. To hold otherwise is to create an artificial distinction. From a privacy standpoint there should be no difference between an overnight guest and a guest who is invited to have dinner or to watch a television program. In short, the length of the stay should not be the determinative factor of whether society recognizes the defendant's expectation of privacy as reasonable. This is certainly true when we consider that telephone calls from a public telephone booth are usually very short in duration, rides in taxicabs typically last only minutes, and stays in dressing rooms are not overnight. *See, Katz, Chapa and Crosby, supra.* For these reasons, I would hold society is willing to recognize as objectively reasonable a non-overnight guest's subjective expectation of privacy. Accordingly, I would hold a non-over-

7. The majority states: "If the court of appeals meant to suggest that a non-overnight guest can *never* have standing, then it was probably incorrect." *Ante* at 137, n. 4 [emphasis in original]. This statement is curious because that same footnote cites *Arcila v. State,* 834 S.W.2d 357 (Tex. Cr.App.1992). If *Arcila* stands for anything, it is that we are *not* the arbiter of individual applications of the law. *Arcila,* 834 S.W.2d at 360. Nevertheless, the majority defies *Arcila* and makes a case specific holding in this case.

night guest may have standing to challenge the legality of the search of the home not his own.[8]

For these reasons, I would reverse the judgment of the Court of Appeals and remand this case to that Court to determine the legality of the instant search. Because the majority does not, I respectfully dissent.

OVERSTREET, J., joins this opinion.

OVERSTREET, J., dissenting.

We granted appellant's first ground for review which avers, "The court of appeals erred in holding that [he] did not have standing to contest an illegal intrusion and search of a residence in which he was an invited guest." The basis of appellant's ground arises from the trial court's denial of his motion to suppress. The court of appeals affirmed the trial court's decision concluding that appellant did not have standing to raise the constitutional claim because he did not have a reasonable expectation of privacy that society is prepared to recognize. *Villarreal v. State,* 893 S.W.2d 559 (Tex.App.Houston [1st] 1994, pet. granted).

The majority agrees with the court of appeals' rationale that the evidence did not establish that appellant's expectation of privacy was one that society was prepared to recognize as reasonable under the circumstances; thus the majority concludes that appellant did not have standing to challenge the search and seizure. I feel that society does indeed recognize one's expectation of privacy in the sanctity of the home. This Court should recognize that all persons have a reasonable expectation of privacy when they are *lawfully* visiting or temporarily residing at another's residence no matter what the length of the stay. Such would seem to be a fundamental principal of a free society, a society that contemplates freedom of movement and respects the rights of the people to visit others and be free from unreasonable searches and seizures while so visiting.

As the majority acknowledges, the United States Supreme Court has held that an overnight guest has a reasonable expectation of privacy and has standing to claim the protection of the Fourth Amendment. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). An overnight guest's expectation of privacy is rooted in understandings that are permitted by society. *Id.* The Supreme Court also pointed out that if such were not true, an adult child temporarily staying with parents would have no reasonable expectation of privacy because the child's right to admit or exclude would be subject to the parents' veto. *Id.* Such is obviously untenable in a free society; and it is likewise untenable for the same adult child to be visiting parents for an evening but to have no expectation of privacy (and no Fourth Amendment protections) simply because the visit is not intended to be overnight. Such is the effect of the majority's holding—nonovernight invited guests, e.g. parents, children, friends, anyone, have no reasonable expectation of privacy. I cannot agree with such a holding. There is not a moratorium on constitutional search and seizure protections when one enters another's residence as an invited non-overnight guest. When invited into someone else's home, a guest's constitutional rights are not left outside at the door simply because the guest is not spending the night there.

The constitutional protections against unreasonable searches and seizures apply to invited non-overnight guests of residences because such guests do have a legitimate expectation of privacy; therefore appellant had standing to complain about the search in this case. Accordingly, this Court should reverse the court of appeals' decision and remand to that court to address the merits of appellant's search and seizure claim. Because the majority does not, I respectfully dissent.

BAIRD, J., joins.

MEYERS, Judge, dissenting.

Relying on our opinion in *Calloway v. State,* 743 S.W.2d 645 (Tex.Crim.App.1988), the Court of Appeals in this case held that

8. The *Rakas* Court rejected a bright line rule stating that anyone legitimately on the premises has standing because such fine lines cannot be drawn in Fourth Amendment cases. *Id.* 439 U.S. at 147–48, 99 S.Ct. at 432–33.

"[a]n individual who has no possessory or proprietary interest in the premises, but is a guest, has no clothes in the house, or other belongings, has no legitimate privacy interest in the premises searched." It seems to me that this proposition of law is plainly false on its face. As Justice Wilson argued in dissent, and as the United States Supreme Court made clear in *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the existence of a proprietary interest is by no means legally essential to the claim that one has a reasonable expectation of privacy in certain premises. Indeed, *Calloway* itself seems to hold that the existence of a privacy expectation and its legitimacy are empirical questions to be decided by the factfinder upon the basis of all relevant evidence, just as any other question of fact. To the extent that the Court of Appeals held otherwise, I believe it was in error. Accordingly, I think that its judgment must be reversed.

Furthermore, I do not agree that this Court should promulgate its own entirely new and, in my opinion, equally erroneous rule of law or that it should engage in a dynamic application of that or any other legal rule to the facts of this case. I would hold that the only rule of decision applicable to the issue presented here is that a person has no standing to complain about an unconstitutional search unless his expectation of privacy in the place searched is considered reasonable by his society. I would also hold that whether appellant's expectation of privacy in this case was one which society actually considered reasonable is an empirical question to be resolved by the factfinder only after he hears all of the relevant evidence. Accordingly, I cannot concur in this Court's judgment either.

The difficulty is a recurring one. Appellate courts are institutionally obliged to address and resolve a variety of questions affecting the fairness and validity of trials. The standard of appellate review is markedly different when the question involves a finding of fact than when it concerns a question of law. With regard to the latter, neither trial judges nor jurors may exercise discretion or judgment to ignore, discredit, diminish the importance of, or refuse fully to implement each and every requirement of the law which is applicable to the decisions they are called upon to make. To the extent that points of error on appeal call for elaboration or interpretation of identifiable constitutional and statutory provisions or authoritative judicial rules and decisions, appellate courts need not defer at all to trial judges or juries. Trial judges may not declare the law of a case to be other than it is, and juries may not nullify it with their verdicts.

The matter is very different with questions of fact. The institutional factfinder, whether judge or jury, is obliged to answer questions of this kind on the basis of evidence which he may usually credit in whatever degree he sees fit. Except under extreme circumstances, he is regarded by the law as sole judge of the credibility of witnesses and of the weight to be given their testimony. The manner in which he performs these evaluations is not rule-governed, from which it follows that he has broad discretion in the task. As a result, appellate courts must defer to his decisions unless the evidence supporting them is so meager or the evidence against them so great that they appear objectively irrational.

What will eventually be manifest to anyone who thinks about this problem very long is that the difference between questions of law and questions of fact is largely a matter of convention. No problem actually presented on appeal is ever really just one or the other, and it is therefore possible to characterize every one either way. But because the law prescribes a different standard of review for each, it is important that reviewing courts at least describe the issue in a manner consistent with the kind of analysis they intend.

In the instant cause, the majority has identified the question presented as one of law, based mainly on this Court's opinion in *Chapa v. State,* 729 S.W.2d 723, 732 n. 3 (Tex. Crim.App.1987), wherein we directly addressed the issue, holding that

> [w]hether a particular expectation of privacy is one society is willing to recognize ... is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular

> context in which appellant harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to sanction that expectation as reasonable or legitimate.

I disagree with this conclusion, and would hold that it has been undermined by recent opinions of this Court, decided since *Chapa*, which treat analogous issues as questions of fact to be reviewed according to a different and more deferential standard.

For example, in *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996) and *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996), we recently held that the question whether a police officer has probable cause to search a person is a matter to be determined by the trier of fact based upon his evaluation of the relevant evidence and its significance.

> When the courts of appeals analyze a trial court's denial of a motion to suppress evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

*DuBose*, 915 S.W.2d at 497–98.[1]

What is here described as a legal conclusion could also be fairly characterized as an application of controlling law to the relevant facts of the case. Literally every issue presented to an appellate court which challenges a finding from which some consequence must follow as a matter of law is just such an issue. Thus, points of error which challenge the sufficiency of evidence to support a legal conclusion, that is any conclusion from which the law makes a certain consequence to follow, are application-of-law-to-fact issues. Such issues are distinguished from pure issues of law and fact by the circumstance that they must be proven at trial by one of the parties. Historical or evidentiary facts, on the other hand, need not be proven at trial, and no legal consequence follows from the failure of a party to prove them. Likewise, laws and propositions of law are ordinarily not subject to trial proof because the judge is assigned by our system the responsibility for declaring the law applicable to each case from his own knowledge or from sources not made a part of the evidentiary record.

It follows that historical or evidentiary factfindings are not reviewable on appeal at all. Declarations of law, on the other hand, must be strictly reviewed by appellate courts for their correctness. All other questions presented on appeal are application-of-law-to-fact questions, and they are generally reviewable under our system of jurisprudence only according to an abuse of discretion standard. That is to say, an appellate court may not set aside the conclusion of a lower court which was reached by the application of correct legal rules to relevant historical or evidentiary facts adduced at trial unless the conclusion is manifestly irrational, given the appropriate burden of proof. *See Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992).

In the present context, a majority of this Court maintains that the question whether appellant's subjective expectation of privacy in the searched premises was considered reasonable by his society is a question of law. Yet, the Court makes it his burden to prove

1. The thoughtful concurring opinion of Presiding Judge McCormick takes a somewhat different view of *DuBose* and *Carter* than I do. He maintains that our holding in those cases merely requires a reviewing court to defer to implied factual findings such as witness credibility. Op. at 140. But with due respect to Judge McCormick's considered judgment in this matter, I think it is perfectly clear, even on a casual reading of our opinions in *DuBose* and *Carter*, that we require "great deference" on appeal to the judgment of a trial court as regards "[b]oth its findings of historical fact *and* its application of the law to those facts[.]" *Carter*, 915 S.W.2d at 504. Thus, however problematic it may be in some contexts to defer on ultimate issues affecting application of important constitutional principles to the peculiar facts of individual cases, our opinions in *Carter* and *DuBose* plainly require appellate courts to do just that. Judge McCormick's representations to the contrary are, therefore, certainly mistaken.

the legitimacy of this expectation, elaborating at some length a purportedly nonexhaustive list of potentially pertinent considerations, taken from our opinion in *Calloway*, 743 S.W.2d at 651, which he might consider producing in evidence, since "he has greater access to the relevant facts[.]" Op. at 138. In my opinion, assigning the burden of proof in this way is patently inconsistent with the Court's position that the matter in issue is a question of law. One need not adduce evidence (certainly not the kind of evidence here contemplated) to establish what class of privacy expectations, if any, the law holds to be reasonable. Simply looking up the law should be quite enough for this purpose if law really has anything to say about it. I am mystified, therefore, as to what sort of proof an accused is expected to make in this connection. How convincing must his proof be before he is entitled to prevail? Is the factfinder at liberty to reject his proof if it seems incredible? And, if so, must the appellate court not defer in some measure to the factfinder's judgment on this question? Holding that an accused must prove society actually regards his expectation of privacy as reasonable seems plainly to hold that it is a question of fact or application of law to fact. For it is the facts, and only the facts, which must be proven at trial. The law is simply declared by the judge, and there need be no evidence adduced to support his declaration.[2]

Thus, a majority of this Court falls into the same error as did the First Court of Appeals. It purports to establish a new rule of law, holding that "American society is not willing to sanction as reasonable the subjective privacy expectation of someone who is in a residence in order to arrange and conduct a business transaction." Op. at 139. Even if I thought this odd proposition to be true, which I do not, it would still be an inappropriate and unnecessary way to resolve this case. The trial judge here refused to suppress the evidence seized from appellant, and the Court of Appeals affirmed his decision upon the basis of an erroneous legal principle. Rather than exacerbate the problem with an even less supportable rule of law, I would reverse the Court of Appeals, hold that the issue presented on appeal is an application-of-law-to-fact question, and remand this cause for further consideration by the First Court of Appeals under an appropriately deferential standard of review.

---

**2.** In his concurring opinion, Presiding Judge McCormick argues that the appropriate standard of review should turn, not merely upon whether the question presented is one of fact or of law or of both, but upon which judicial actor (trial judge or appellate court) is "better positioned" to decide the question. Op. at 139, 140. He intimates, without much elaboration, that applications of important constitutional principles should be uniform (not subject to "majoritarian political processes and temporary passions of the day"), and suggests that appellate courts are in a better position to ensure such uniformity than are the trial level courts. *See* Op. at 140. There is, of course, much persuasive force in this argument. But it is nevertheless at odds with the present state of our law, and would bring about profound changes in that law if adopted wholesale. Accordingly, even if very good reasons exist for assigning ultimate responsibility to the appellate courts as regards some applications of law to fact, our precedents do not yet accommodate such an approach. While it is true that we have often seized control of such questions, we have never attempted any coherent explanation of why we refuse to defer to the factfinder on certain application-of-law-to-fact questions and not on others. Instead, we simply pretend, as the majority does in the instant cause, that such questions are really questions of law after all. But they aren't, and the pretense only promotes sloppy thinking and erratic appellate review. If this Court is to take the position that some applications of law to fact are ultimately the province of appellate courts, it should fashion a comprehensible general theory for benefit of the bench and bar and not just run roughshod over the findings of lower courts whenever it disagrees with them.