In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00085-CR


______________________________




DONALD BERFORD JOHNSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28,803-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Donald Berford Johnson appeals his conviction for possession of methamphetamine
in an amount greater than or equal to one gram, but less than four grams, with intent to
deliver. Johnson pled guilty, as part of a plea agreement, and the trial court sentenced him
to eleven years' imprisonment, as called for in the plea agreement.

 In the same proceeding, Johnson also pled guilty, as part of a plea agreement, to
possession of cocaine in an amount greater than or equal to four grams, but less than 200
grams. The trial court sentenced him to eleven years' imprisonment as called for in the
plea agreement. The trial court also ordered both sentences to run concurrently.

 In both cases, Johnson filed motions to suppress the narcotics and a written
statement he made to police. The trial court overruled both motions. Johnson has filed
a specific notice of appeal in both cases as required by Rule 25.2(b)(3). See Tex. R. App.
P. 25.2(b)(3) (Vernon 2002). (1) This opinion addresses Johnson's conviction for possession
of methamphetamine with intent to deliver. We address his conviction for possession of
cocaine in a separate opinion.

 Johnson contends the trial court erred in overruling his suppression motions. (2) At
the suppression hearing, Officer Stuart Nipper testified he received information from a
confidential informant regarding narcotics trafficking at Johnson's home. He testified he
corroborated this information by making a narcotics purchase at Johnson's home. He then
obtained a search warrant. The record shows the search warrant was issued at 1:35 p.m. 

 Nipper testified he executed the warrant "[a]round 2:00 o'clock - 2:05, something
like that" in the afternoon. He testified he approached Johnson, who was working on a car
near his house. He testified he did not present the warrant to Johnson immediately, but
showed it to him later. Nipper testified Johnson was placed into custody thirty or forty-five
minutes after the search began. 

 Officer Floyd Wingo testified he arrived at the scene "after 2:00 o'clock. . . .
probably 2:15 or so." He testified Johnson was not arrested and taken into custody until
around 2:45 p.m. Wingo later took a statement from Johnson at the sheriff's office. The
record shows Johnson signed the statement shortly after 2:30 p.m. 

 Regarding the statement itself, Wingo testified he read Johnson his rights and
Johnson signed a written waiver of those rights. He testified Johnson declined the
opportunity to speak with an attorney. He also testified Johnson did not appear intoxicated,
appeared to understand his rights, and responded appropriately to the questions Wingo
asked him. 

 Johnson testified the officers arrived at his home around noon. He testified they
approached him, "slammed" him against his car, and held a gun to his back. He testified
the officers informed him they had a warrant, and he asked them to produce the warrant. 
He testified Wingo told him they were "waiting on the warrant." 

 Johnson testified the officers entered his house and told his girlfriend and child to
come outside. They all waited outside for about ten or fifteen minutes until other officers
who purportedly had the warrant arrived, at which point the officers conducted the search. 
Johnson testified he was never shown a copy of the warrant, despite numerous requests. 
He testified the search took "between an hour and a [sic] hour and a half" and then he was
taken into custody sometime around 1:00 p.m. 

 Johnson testified Wingo began interrogating him around 1:30 p.m. He testified he
requested to speak with his attorney, but the officers told him that, if he refused to sign the
statement and called his attorney, they would arrest his girlfriend and put his child in foster
care. 

 He testified he signed the statement to protect his girlfriend and his child. He also
testified he lied in his statement when he said his girlfriend "had nothing to do with the
drugs." He did so, he said, to protect his family. He testified that, after he signed the
statement, Wingo called other officers and told them to release Johnson's girlfriend. 

 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses and the weight of their testimony. Green v. State, 934 S.W.2d
92, 98 (Tex. Crim. App. 1996). Therefore, an appellate court must view the evidence in
the record and draw all reasonable inferences therefrom in the light most favorable to the
trial court's ruling. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Further, the appellate court must sustain the trial court's ruling if it is reasonably supported
by the record and is correct on any theory of law applicable to the case. Id.; Romero v.
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

 The general rule is that we must afford almost total deference to the trial court's
determination of the historical facts the record supports, especially when the trial court's
fact-findings are based on an evaluation of credibility and demeanor. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial
court's ruling on the application of law to fact questions if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. Id. We may review de novo
the application of law to fact questions not turning on credibility and demeanor. Id.

 Johnson contends the narcotics evidence should have been suppressed because
the record shows the officers obtained the warrant after completing the search. Viewing
the record in the light most favorable to the trial court's ruling, however, we conclude the
trial court did not err in refusing to suppress the narcotics evidence. Nipper testified he had
a warrant before searching Johnson's home, and as the fact-finder, the trial court was free
to believe Nipper's testimony.

 Johnson makes much of a purported time discrepancy in Nipper's and Wingo's
testimony. They testified that the search began around 2:00 p.m. and that Johnson was
arrested around 2:45 p.m. Yet the record shows Johnson signed the statement at around
2:30 p.m. In addition, Johnson contends his own testimony that the search began shortly
after noon and that the officers never showed him the warrant, combined with the warrant
itself, which shows it was issued at 1:35 p.m., demonstrates the search was conducted
before the warrant was issued and is more consistent with the time frame indicated by
Nipper and Wingo.

 But the trial court was free to disbelieve Johnson's testimony and to give greater
weight to Nipper's and Wingo's testimony. Further, Nipper and Wingo testified they were
giving approximate, not exact, times regarding when the warrant was executed, how long
the search took, and when Johnson was arrested and taken into custody. Therefore, the
trial court did not err in refusing to suppress the narcotics evidence.

 Johnson also contends the trial court erred in refusing to suppress his statement,
which he contends was coerced. The statement of an accused may be used against him
or her if it appears it was freely and voluntarily made without compulsion or persuasion. 
Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). A statement is involuntary if there
was official, coercive conduct of such a nature that any statement obtained was unlikely
to have been the product of an essentially free and unconstrained choice. Alvarado v.
State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

 Johnson's contention that his statement was coerced is based on his own testimony
that the officers refused his request for an attorney and threatened his girlfriend and child
if he did not sign the statement. Wingo contradicted these assertions when he testified
that Johnson did not request an attorney and that Johnson's statement was not coerced. 
As the trier of fact, the trial court was free to believe Wingo's testimony and to disbelieve
Johnson's. Because this determination is based solely on the credibility and demeanor of
the witnesses, we must afford it almost total deference. See Guzman, 955 S.W.2d at 89.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: December 3, 2002

Date Decided: January 27, 2003


Do Not Publish




1. By an order dated December 23, 2002, the Texas Court of Criminal Appeals
approved changes to Rule 25.2. The changes became effective January 1, 2003. 
Because Johnson filed his notices of appeal before January 1, 2003, we apply the former
rule.
2. Johnson also contends the trial court erred in failing to issue findings of fact and
conclusions of law as required by Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon
1979). The record shows the trial court filed its findings of fact and conclusions of law after
Johnson filed his brief. Therefore, this issue is moot.