Affirmed and Memorandum Opinion filed May 20, 2008








Affirmed and Memorandum Opinion filed May 20, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01116-CR

NO. 14-06-01117-CR

____________

 

MICHAEL LEE CARRINGTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause Nos:1087438;1087436

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Michael Lee Carrington, appeals his convictions
for burglary of a habitation and unauthorized use of a motor vehicle.  A jury
found appellant guilty of both offenses, and the trial judge assessed
punishment at 40 years imprisonment for the burglary and 20 years imprisonment
for the unauthorized use.  On appeal, appellant (1) contends that the trial
court abused its discretion in overruling appellant=s motion to
suppress his oral statements to police, and (2) challenges the legal and
factual sufficiency of the evidence to support the two convictions.  We affirm.








I.  Background

Ramon Gomez testified that on September 24, 2005, when he
returned after having evacuated for Hurricane Rita, he discovered that the
window on the door to his apartment was shattered.  Walking through the
apartment, he realized that a couple of televisions and computer equipment had
been removed.  Gomez returned to his vehicle to wait for the police and spotted
a white Cadillac parked close by with two people sitting inside.  He wrote down
the license number of the car and then observed as two people, a black male and
an Hispanic female, emerged, walked to the entrance of Gomez=s apartment, and
then returned to the Cadillac and drove away.  Gomez identified appellant as
the black male that he saw driving the Cadillac and walking to the apartment
entrance.  Police officers arrived at the apartment complex as the Cadillac was
leaving.  Gomez gave one of the officers the license number of the Cadillac as
well as a physical description of the two occupants.

Guadalupe Gonzalez, a police officer with the Baytown
Police Department, testified that on September 23, 2005, he was out on patrol
during the Hurricane Rita evacuations when he responded to the scene of a
vehicle stop by another officer.  The vehicle involved was a white Cadillac,
and Gonzalez identified appellant as being in the driver=s seat.  Neither
appellant nor the vehicle was detained at that time.

Gonzalez further testified that on September 24, he and his
partner responded to a report of a burglary of a habitation.  At the scene, he
spoke with Bonnie Cook and her son John Cook.  A door had been pried open at
Bonnie Cook=s residence, and her car keys and car were stolen. 
Later that evening, Gonzalez responded to another burglary of a habitation
report, at which time he met with Ramon Gomez who provided the license number
of a suspicious vehicle matching the license number of the vehicle reported
stolen by the Cooks.








Gonzalez and his partner then began looking for the white
Cadillac and located it at an apartment complex.  Melanie Gonzales was sitting
in the vehicle, and after questioning her and obtaining consent to enter her
apartment, the officers found appellant inside the apartment.  Appellant was
subsequently identified at the scene by Ramon Gomez as the man Gomez had seen
at his apartment.  Gomez further identified several items found in the trunk of
the Cadillac as belonging to him, including a television, computer equipment,
and shoes.  In a videotaped statement that was played at trial, appellant
confessed to entering an apartment to take computer equipment.

Prior to trial, appellant moved to suppress admission of
his oral statements to police.  At a hearing on the motion, Officer Gonzalez
testified that after appellant was arrested and placed in the back of a patrol
car, Gonzalez read appellant his rights.  Appellant then said that he did not
want to talk to Gonzalez but wanted a lawyer.  After appellant requested a
lawyer, Gonzalez did not ask him any further questions.  Later, Gonzalez talked
to a prosecutor regarding what charges to file.  He told the prosecutor that
appellant said he didn=t want to talk to Gonzalez but that he
(Gonzalez) would get a detective to talk to appellant.  At some point,
appellant attempted to converse with Gonzalez, but Gonzalez told appellant he
could not speak with him because appellant had asserted his right to a lawyer. 
Appellant then said AI=ll talk to you,@ which Gonzalez
took to mean that appellant wanted to talk to someone about the case.








A videotape, taken inside Gonzalez=s patrol car and
admitted at the suppression hearing, confirmed that appellant initially refused
to speak to Gonzalez and asked for an attorney.  The videotape further confirms
the conversation Gonzalez had with a prosecutor.  This conversation apparently
occurred outside the vehicle but was recorded via a microphone Gonzalez wore on
his person.  Subsequent to that conversation, Gonzalez re-entered the vehicle. 
Without any prompting by Gonzalez, appellant then asked how the police intended
to Aplace@ him in the stolen
vehicle given that he was in an apartment and not in the vehicle when the
police located him.  Gonzalez responded that he couldn=t talk to
appellant because when Gonzalez read appellant his rights, appellant refused to
talk.  Gonzalez also said that he couldn=t ask appellant
any questions.  Appellant replied that Gonzalez had not tried to ask any
questions.  Gonzalez then reiterated that he couldn=t ask any
questions unless appellant waived his rights.  Appellant then said AI=ll talk to you.@  Later on the
videotape, Gonzalez can be heard telling someone, presumably over a radio or
cell phone, that appellant now wanted to talk.

Once appellant was taken to the jail, he met with Detective
Edgar Elizondo.  Officer Gonzalez put in his report that appellant requested an
attorney, but he did not remember if he personally told Detective Elizondo when
he spoke to him about the case. Detective Elizondo testified that he met
appellant near the booking area of the jail and spoke to him of certain
suspicious items in his vehicle.  When appellant agreed to talk to Elizondo,
the latter took him to an interview room.  To be certain that appellant
understood English, Elizondo had him read aloud the first line of a printed
list of rights.  Elizondo then read the list of rights to appellant, and
appellant signed a waiver of those rights.  At no point did appellant tell
Elizondo that he wanted a lawyer present or that he wanted to end the
interview.  Appellant was not threatened or coerced into giving a statement. 
Appellant signed a waiver of his rights.  Elizondo testified that no one
informed him of appellant=s request for a lawyer before he arrived
at the jail.  Elizondo acknowledged that he might have proceeded differently if
someone had told him, but he further explained that if he also had been told
that appellant subsequently initiated a conversation with an officer, he would
still have talked to him.  A videotape of Elizondo=s interview with
appellant basically confirmed Elizondo=s version of
events.








Appellant testified at the hearing that when he was first
placed in the back of a patrol car, an officer asked him if he wanted to make a
confession, and he said Ano.@  Later, after he
was taken to a police station, a detective said that he wanted to ask appellant
a few questions, to which appellant responded A[m]y lawyer not
here.@  According to
appellant, the detective said A[w]ell, you really don=t need a lawyer
right now,@ and started questioning him about the car and the
burglary.  Appellant said that Officer Gonzalez read his rights to him, but he
could not remember whether the detective did.  Initially, appellant denied
committing burglary, but after the detective suggested they had as many as
twenty burglaries to charge him with, appellant agreed to confess to just one. 
Appellant admitted signing the waiver of rights but said that he did not
understand what it was.  He said that he did not mention wanting a lawyer after
the first time.  He said that he understood he had a right to have a lawyer
present and wanted one to be present.

II.  Motion to Suppress

In his first issue, appellant asserts that the trial court
abused its discretion in overruling his motion to suppress his oral statements
to police.  Specifically, appellant contends that the police officers who took
his statements violated his Fifth Amendment right to counsel.  U.S. Const. amend. V.  We review a
trial court=s ruling on a motion to suppress evidence under an
abuse of discretion standard.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).  At a suppression hearing, the trial judge is the sole
fact finder.  Arnold v. State, 873 S.W.2d 27, 34 (Tex. Crim. App.
1993).  We give almost total deference to the trial court=s determination of
historical facts when supported by the record, particularly if the findings
turn on witness credibility and demeanor.  State v. Ross, 32 S.W.3d 853,
856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  The same deference is accorded to determinations of mixed questions of
law and fact if their resolution depends upon witness credibility and
demeanor.  Ross, 32 S.W.3d at 856.  Issues that present purely legal
questions are considered under a de novo standard.  Id.  We will sustain
the trial court=s ruling if it is reasonably supported by
the record and is correct on any theory of law applicable to the case.  Villarreal,
935 S.W.2d at 138.

Here, appellant specifically contends when he requested
counsel, the officers improperly questioned him without providing him with
counsel.  Once a suspect has asserted his or her right to an attorney, police
may not continue questioning the suspect unless the suspect initiates further
communication and validly waives the right to counsel.  Oregon v. Bradshaw,
462 U.S. 1039, 1044-46 (1983); Edwards v. Arizona, 451 U.S. 477, 484-85
(1981); Cross v. State, 144 S.W.3d 521, 526-27 (Tex. Crim. App. 2004).








As described in detail above, the record here supports the
conclusion that after asserting his right to counsel, appellant initiated a
conversation with Officer Gonzalez, at least twice indicated that he wanted to
talk to the police (once to Gonzalez and once to Detective Elizondo), and then
signed a written waiver of his right to counsel before discussing the case with
Detective Elizondo.  Appellant argues that Gonzalez violated appellant=s rights when he
got into the patrol car with appellant Awith the specific
intent to violate [appellant=s] right to counsel and talk to him to get
him to waive his rights.@  Whether or not Gonzalez put himself in
proximity to appellant in the hope that appellant would waive his rights is
beyond the point of our analysis.  The videotape taken within the patrol car
reveals that it was appellant who initiated the conversation and who indicated
he wanted to talk to police when told by Gonzalez that they could not talk
because appellant had asserted his rights.  Furthermore, the videotape taken in
the interview room reveals that appellant signed a written waiver of his rights
before discussing the case with Detective Elizondo.  These videotapes, combined
with the officers= testimony, are sufficient to support the
trial court=s conclusion that appellant=s right to counsel
was not violated.  Accordingly, we overrule appellant=s first issue.

III.  Sufficiency of the Evidence








In his second and third issues, appellant attacks
respectively the legal and factual sufficiency of the evidence to support the
two convictions.  In addressing these sufficiency challenges, we utilize the
well-established standards of review.  See King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000) (legal sufficiency standards); Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency standards).  In
making his arguments, appellant specifically asserts that the evidence is
insufficient in the absence of his inadmissible videotaped confession. 
However, in conducting legal and factual sufficiency reviews, we consider all
evidence at trial whether properly admitted or not.  See Powell v. State,
194 S.W.3d 503, 507 (Tex. Crim. App. 2006); Ruth v. State, 167 S.W.3d
560, 571 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  Furthermore,
we held above that the trial court did not err in admitting the videotape into
evidence.

A.  Burglary of Habitation

Generally, to support conviction for burglary of a
habitation, the evidence must demonstrate that (1) the defendant entered a
habitation, (2) without the effective consent of the owner, (3) in order to
commit or attempt to commit a felony, theft, or assault.  Tex. Penal Code ' 30.02(a)(3); Powell
v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).  Appellant confessed
to entering an apartment to take computer equipment.  Several people testified
to having seen appellant driving a particular white Cadillac in which was found
computer equipment belonging to Ramon Gomez.  Gomez testified that his
apartment was broken into and that the computer equipment and other items found
in the white Cadillac were taken from his apartment without his consent.  He
further stated that he saw appellant approach the entrance to the apartment
before turning away and then driving away in the white Cadillac.

In both his legal and factual sufficiency challenges to the
burglary conviction, appellant emphasizes that Gomez did not actually see him
enter the apartment.  However, given appellant=s confession and
the strong circumstantial evidence that he entered the apartment to steal
computer equipment among other things, we find that the evidence was legally
and factually sufficient to sustain the burglary conviction.

B.  Unauthorized Use of a Motor Vehicle








To support conviction for unauthorized use of a motor
vehicle, the evidence must demonstrate that the defendant intentionally or
knowingly operated another person=s vehicle without
the effective consent of the owner.  Tex. Penal Code ' 31.07.  Appellant
was reported by several people to have been seen driving a particular white
Cadillac, which belonged to Bonnie Cook.  There was also evidence that Cook did
not give appellant permission to drive her vehicle and that the keys to the
vehicle had been stolen from Cook=s house.

Appellant contends that because he was only seen driving
the vehicle before Cook reported it was stolen, the evidence is legally and
factually insufficient to support the unauthorized use conviction.  However,
the penal statute at issue criminalizes operation of a vehicle without consent
of the owner, not just operation after the vehicle is reported stolen.  Id. 
Based on the evidence recounted above, we find that the evidence was legally
and factually sufficient to sustain the unauthorized use conviction.  Because
we find that the evidence was legally and factually sufficient to support both
of appellant=s convictions, we overrule his second and third
issues.

We affirm the trial court=s judgment.

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 20, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).