Affirmed and Memorandum Opinion filed July 22, 2008








Affirmed and Memorandum Opinion filed July 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00443-CR

____________

 

RUFUS FRANCKLIN BANKS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1431634

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Rufus Francklin Banks, challenges the denial of
his motion to suppress evidence.  We affirm.








 Banks was charged by information with the January 29,
2007, misdemeanor offense of possession of marijuana in a useable quantity of
under two ounces, enhanced by one prior misdemeanor conviction.  On May 11,
2007, Banks filed a motion to suppress evidence, asserting that his detention,
arrest, search, and seizure were in violation of the United States Constitution
and the Texas Constitution.  

The trial court held a hearing on the motion to suppress,
and the State called Officer Dexter to describe the circumstances surrounding
Banks=s arrest.  He
testified that on the evening of January 29, 2007, he was patrolling Aa pretty tough
neighborhood@ where A[a]ll types of
crimes are committed.@  When asked what types of crimes were
common for that area, he responded that A[t]he most common
you will find is drug activity. . . . [s]elling, using, possessing.@  While patrolling
the neighborhood, Officer Dexter saw Atwo males outside
a vehicle making a hand-to-hand transaction.@  He explained
that he thought it was a hand-to-hand transaction because it occurred in a
common area for selling drugs, and because it did not look like a handshake
since the two men were not Ashaking hands parallel to each other, but
one on top of another.@  Upon seeing the police officers, Banks
tried to go into a nearby store and the other man attempted to leave the
scene.  When Officer Dexter called out to Banks, he returned and Officer Dexter
patted him down because he Athought a drug transaction had occurred.@  He Apat[ted] down the
areas that possibly would hold a weapon,@ and explained to
the court that he was looking for weapons, as well as drugs.  As he patted down
Banks=s leg, he Afelt the obvious
bulge of marijuana packaging.@  When Officer Dexter asked Banks what was
in his pocket, he did not respond.  Officer Dexter then arrested Banks, and
reached into Banks=s pocket and located the marijuana.  On
cross examination, Officer Dexter admitted that he was driving when he saw the
transaction and that he did not actually see anything being handed off.  He
also admitted that although it did not appear to be a normal handshake, it
could have been a different type of handshake that the two men made up.  The
trial court denied the motion to suppress on May 18, 2007.  On May 21, 2007,
Banks waived his right to a trial by jury and entered a plea of guilty.  The
trial court assessed punishment at confinement in the Harris County Jail for 32
days.  Appellant timely filed this appeal to the denial of his motion to
suppress.    








A trial court=s ruling on a
motion to suppress generally lies within the sound discretion of the court.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Because the trial court is the
observer of the demeanor and appearance of the witnesses during the hearing on
the motion, the trial court is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  Villarreal,
935 S.W.2d at 138.  Therefore, we must view the evidence and all
reasonable inferences therefrom in the light most favorable to the ruling of
the trial court.  Id.  The trial court=s ruling must be
sustained if it is reasonably supported by the record and is correct on any
theory of law applicable to the case.  Id.  Although we must afford
almost total deference to the trial court=s determination on
application of law to fact questions, we may review mixed questions of law and
fact de novo, when resolution of the ultimate issue does not turn on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.








The purpose of the Fourth Amendment of the United States
Constitution and Article 1, Section 9 of the Texas Constitution is to Asafeguard an
individual=s legitimate expectation of privacy from unreasonable
governmental intrusions.@  Villarreal, 935 S.W.2d at 138. 
In order to suppress evidence based on an alleged Fourth Amendment violation,[1]
Banks must rebut the presumption of proper police conduct.  See Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  This burden can be
satisfied by establishing that a search or seizure occurred without a warrant. 
Id.  Because the search and seizure in the present case occurred without
a warrant, the burden of proof shifts to the State to establish that the search
and seizure were reasonable.  See id.  Searches conducted outside the
judicial process without prior approval by a judge or a magistrate are per se
unreasonable, unless the search falls into one of the few established
exceptions.  Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971). 
Banks asserts that his search did not fall into one of the exceptions, and
therefore the trial court should have granted his motion to suppress.  We
disagree.

Officer Dexter=s initial
detention of Banks was lawful, based upon his reasonable suspicion that Banks
was involved in criminal activity.  A[S]ome seizures
admittedly covered by the Fourth Amendment constitute such limited intrusions
on the personal security of those detained and are justified by such
substantial law enforcement interests that they may be made on less than
probable cause, so long as police have an articulable basis for suspecting
criminal activity.@  Michigan v. Summers, 452 U.S.
692, 699 (1981).   For example, an officer conducts a lawful temporary
detention when he has reasonable suspicion that an individual is violating the
law.  Ford, 158 S.W.3d at 492.  Reasonable suspicion exists if,
considering the totality of the circumstances, Athe officer has
specific, articulable facts that, when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person
actually is, has been, or soon will be engaged in criminal activity.@  Id.  Additionally,
a Abrief stop of a
suspicious individual, in order to determine his identity or to maintain the
status quo momentarily while obtaining more information, may be most reasonable
in light of the facts known to the officer at the time.@  Adams v.
Williams, 407 U.S. 143, 146 (1972).  








In the present case, Officer Dexter testified that Banks
was seen in a Apretty tough neighborhood@ where A[a]ll types of
crimes are committed,@ the most common of which is Adrug activity.@  Although Banks=s Apresence in an
area of expected criminal activity, standing alone, is not enough to support a
reasonable, particularized suspicion@ that he was
committing a crime, it is a relevant factor for determining reasonable
suspicion.  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  Another
relevant factor was that Officer Dexter observed Banks and another male Aoutside a vehicle
making a hand-to-hand transaction.@  He explained
that he thought it was a hand-to-hand transaction because it took place in a
common area for selling drugs, and because it did not look like a handshake
since they were not Ashaking hands parallel to each other, but
one on top of another.@  Finally, Officer Dexter testified that
Banks and the other male split up and walked in different directions upon
seeing the police officers.  Nervous or evasive behavior, such as unprovoked
flight upon noticing a police officer, is also a pertinent factor in
determining reasonable suspicion.  Wardlow, 528 U.S. at 124. 
Considering the totality of the circumstances, specific and articulable facts
existed that, when combined with rational inferences from those facts, support
the reasonable conclusion that Banks was, had been, or soon would be engaged in
criminal activity. See Ford, 158 S.W.3d at 492.  








Similarly, Officer Dexter=s pat down of
Banks was lawful.  An officer may conduct a limited search for weapons, even in
the absence of probable cause, when the officer reasonably believes that a
suspect is armed and dangerous.  Carmouche v. State, 10 S.W.3d 323, 329
(Tex. Crim. App. 2000).  The pat down of a suspect for weapons, incident to a
lawful temporary detention, is reasonable under the Fourth Amendment.  Terry
v. Ohio, 392 U.S. 1, 29 (1968).  However, the pat down must be Aconfined in scope
to an intrusion reasonably designed to discover guns, knives, clubs, or other
hidden instruments for the assault of the police officer.@  Id.  In
the present case, Officer Dexter explained to the court that he was looking for
weapons as well as drugs when he Apat[ted] down the
areas that possibly would hold a weapon.@  It is Aobjectively
reasonable for a police officer to believe that persons involved in the drug
business are armed and dangerous.@  Griffin v.
State, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006).  Further, Aweapons and
violence are frequently associated with drug transactions.@  Carmouche,
10 S.W.3d at 330. Therefore, Officer Dexter=s pat down of
Banks, incident to his lawful temporary detention, was reasonable given his
suspected involvement in a drug transaction. 

Finally, Officer Dexter=s seizure of the
marijuana in Banks=s pocket was lawful.  When a police
officer lawfully Apats down a suspect=s outer clothing
and feels an object whose contour or mass makes its identity immediately
apparent, there has been no invasion of the suspect=s privacy beyond
that already authorized by the officer=s search for
weapons; if the object is contraband, its warrantless seizure would be
justified.@  Minnesota v. Dickerson, 508 U.S. 366, 375-76
(1993).  It appears from the record that the identity of the contraband was
immediately apparent to Officer Dexter during his pat down of Banks.  Officer
Dexter testified that Aas I was patting [Banks] down, he kind of
moved. . . .  So, as I patted further down his jacket, going down his leg, I
felt the obvious bulge of marijuana packaging.@  When asked to
explain what he meant when he said that Banks moved, Officer Dexter responded
that AI guess people
tend to get squirmish when you go to certain areas if they=re attempting to
hide something.@  The moment he felt the bulge, he thought
it was marijuana.  Officer Dexter Aasked [Banks] what
it was.  He did not respond.  At which time, [Officer Dexter] went ahead and
arrested him.@  After advising Banks that he was under arrest for
possession of marijuana, Officer Dexter reached into Banks=s pocket and
located the marijuana.  

Although Officer Dexter had not actually seen the marijuana
at the time that he reached into Banks=s pocket after the
arrest, Athe sense of touch
is capable of revealing the nature of an object with sufficient reliability to
support a seizure.@  Id. at 376.  Further, because
Officer Dexter had already identified the contraband during his pat down, the
seizure of the contraband was not a further invasion of privacy.  See id. at
377 (holding that A[t]he seizure of an item whose identity is
already known occasions no further invasion of privacy.@).       

 








Based on the foregoing, we affirm the trial court=s denial of the
motion to suppress.

 

 

 

 

/s/      Jeff Brown

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 22, 2008.

Panel consists of
Justices Yates, Anderson, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  Banks inadequately briefed his state constitutional
claim by failing to provide any argument or authority regarding how the
protections afforded by the Texas Constitution differ from the protections
afforded by the United States Constitution.  Therefore, we will not review his
state constitutional claim.  Tex. R. App. P. 38.1(h); McCambridge v. State,
712 S.W.2d 499, 502 n.9 (Tex. Crim. App. 1986) (explaining that A[a]ttorneys, when briefing constitutional questions,
should carefully separate federal and state issues into separate grounds and
provide substantive analysis or argument on each separate ground.  If
sufficient distinction between state and federal constitutional grounds is not
provided by counsel, this Court may overrule the ground as multifarious.@); Johnson v. State, 853 S.W.2d 527, 533 (Tex.
Crim. App. 1992), cert. denied, 114 S.Ct. 154 (1993) (holding that
although appellant claimed that there was a violation of the Texas
Constitution, Aappellant proffers no argument or authority as to the
protection offered by the Texas Constitution or how that protection differs
from the protection guaranteed by the U.S. Constitution.  We decline to pursue
appellant=s Texas Constitutional arguments for him.@).