COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ANTHONY YARBROUGH, | | No. 08-07-00290-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | Criminal District Court No. 2 |
| | § | |
| THE STATE OF TEXAS, | | of Dallas County, Texas |
| | § | |
| Appellee. | | (TC # F-0555118-I) |
| | § | |

**O P I N I O N**

Anthony Yarbrough appeals his conviction of possession of more than four ounces but less than five pounds of marihuana. Appellant waived his right to a jury trial and entered a negotiated plea of guilty. The trial court found Appellant guilty and assessed his punishment, in accordance with the plea bargain, at imprisonment in the state jail for a term of one year. We affirm.

**FACTUAL SUMMARY**

Appellant filed a pretrial motion to suppress evidence alleging that the search of the residence was unlawful because it was conducted without a warrant or probable cause. Two hearings were conducted on the motion to suppress. Evidence admitted at the hearings showed that on July 23, 2005, Dallas police officers were conducting knock-and-talk operations on five to ten houses in response to drug complaints that had been received by the police department. Detective Willie Ford, a narcotics detective with the Dallas Police Department, and several other uniformed officers went to one of the subject houses located at the corner of Rutz and Dennison. Ford saw that a car in the driveway was running but there was no one in it. Ford went to the side door of the residence because he knew from prior surveillance that people used the side door to enter the house. When Ford

knocked on the door, it opened three or four inches. Ford did not turn the doorknob or push open the door. He could see into the house through the opening and observed three or four people sitting on a couch. He also saw a gun on the couch. On a table, Ford saw money, plastic baggies which appeared to contain marihuana, and a white rock substance.[1] Appellant and the other people seated on the couch were counting money. When the people saw Ford, they ran. Having seen the gun and the people running, Ford became concerned for his safety and the possibility that evidence would be destroyed. Ford and the other officers with him then entered the house and secured the suspects and evidence.

The State also introduced evidence that Appellant was on probation. On August 31, 2003, he had informed the community supervision department that his residence was 437 Long Shadow Lane, Mesquite, Texas. A probationer is required to notify the community supervision department of his current residence. Appellant had not notified the department of any change of address. Nikita Jackson testified for the defense in an effort to show Appellant had standing to challenge the search of the residence on Rutz Street. Jackson had gone to the house on Rutz Street in December 2004 to have sex with Appellant. Jackson did not return to the house after that date because Appellant would go to her house instead. Appellant testified that an old man named Mr. Willie let them hang out at the house on Rutz. Appellant said he was not "stable" at one point, so Mr. Willie gave him permission to stay at the house. Appellant stayed at the house for two weeks but he did not specify when that two week period occurred. The house was a place he could hang out with his friends and take women to have sex. Mr. Willie also gave him permission to leave his pit bull in the yard since the entire yard was fenced. Appellant did not have a key.

At the conclusion of both hearings, the State argued that Appellant lacked standing to contest

---

[1] The substance in the baggies was marihauna and the white rock substance was cocaine.

the search of the residence. It also maintained that the search was not unlawful because the officer saw the marihuana in plain view. The trial court denied the motion to suppress, finding that: police officers were conducting a knock-and-talk operation; the door opened when Detective Ford knocked on it; and he saw what he believed to be marihuana in plain view. Appellant subsequently entered a negotiated plea of guilty and the trial court certified that Appellant had a right to appeal the pre-trial ruling on the motion to suppress. On appeal, Appellant challenges the denial of his motion to suppress evidence seized as a result of the police officers entry into the house.

## STANDING

The State argues, as it did in the trial court, that Appellant lacked standing to contest the search of the residence. Appellant has standing to contest the search only if he had a reasonable *personal* expectation of privacy in the area or item searched. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004), *citing Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978)(noting that issue of standing involves two inquiries: first, whether defendant has alleged an "injury in fact"; and second, "whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties"). Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. *Id.* Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Id.* He has no standing to complain about the invasion of someone else's personal rights. *Id.* Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *Id.* Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*. *Id.*

To have standing, or a reasonable expectation of privacy, a defendant must show that: (1) he had an actual, subjective expectation of privacy, exhibited by measures taken to protect the privacy of the property in question; and (2) the subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). The following factors are relevant to a court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Villarreal*, 935 S.W.2d at 138.

There is some evidence in the record that Appellant had a subjective expectation of privacy in the Rutz house. Appellant obtained Mr. Willie's permission to leave his pregnant pit bull there because the entire yard was fenced and it would prevent anyone from stealing the puppies. Further, Appellant sometimes took women to the residence in order to have sex with them. But the evidence does not support a conclusion that Appellant's subjective expectation of privacy is one that society is prepared to recognize as reasonable. There is no evidence that Appellant had a property or possessory interest in the house. Although Appellant had Mr. Willie's permission to use the residence, he did not have a key and had to rely on someone else being at the residence to gain entry. There is also no evidence Appellant had dominion or control of the residence or the right to exclude others. Appellant had used the residence for private purposes in the past, such as hanging out with the guys, playing video games, and having sex with women. There is also evidence he had lived in

the residence for a two-week period at an unspecified time, but it does not show he was living at the house at the time of the search or that he even intended to be an overnight guest. To the contrary, Appellant testified at his guilty plea that he was at the residence for the purpose of buying marihuana. It was his car that was parked in the driveway and still running when the officers arrived. Further, Appellant admitted that the house did not have any running water. Under these facts, we conclude that Appellant's subjective expectation of privacy is not one that society is prepared to recognize as reasonable. *See Villarreal*, 935 S.W.2d at 139 (non-overnight guest's subjective expectation of privacy in home was not one that society was willing to sanction as objectively reasonable, and thus guest did not have standing to challenge search of home; guest was in home earlier in evening to arrange business transaction, left residence, and returned shortly after midnight, rushing into residence to avoid arrest; defendant guest had no property or possessory interest in residence, nor was there any evidence that guest had dominion or control over residence, or right to exclude others). Because Appellant does not have standing to challenge the legality of the search, we overrule his sole point of error. The judgment of the trial court is affirmed.

January 6, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

ANN CRAWFORD McCLURE, Justice